CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Assistant Director
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246
Email: jeffrey.robins@usdoj.gov
JAMES WALKER
Trial Attorney

Attorneys for Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| INLAND EMPIRE – IMMIGRANT YOUTH COLLECTIVE and JESUS ALONSO ARREOLA ROBLES, on behalf of himself and others similarly situated, | ) ) ) ) ) ) ) | Case No. 5:17-cv-2048-MWF-SHK |
| Plaintiff, | ) ) | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT. 16].** |
| v. | ) ) | **Judge:** Hon. Michael W. Fitzgerald |
| ELAINE C. DUKE, Acting Secretary of Homeland Security, *et al.*, | ) ) ) ) | **Courtroom:** 5A **Hearing:** November 20, 2017 **Time:** 10 a.m. |
| Defendants. | ) ) | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

Introduction .................................................................................................. 1

    I.   Overview of Deferred Action and the DACA Policy ......................... 2

    II.  Factual Background ........................................................................... 5

ARGUMENT .................................................................................................. 9

    I.   Standards of Review ......................................................................... 9

    II.  Plaintiff Cannot Sustain the Requirements for Preliminary Relief ................... 10

        A.   Plaintiff Cannot Demonstrate Imminent, Irreparable Harm ................... 11

        B.   Plaintiff is not Likely to Succeed on the Merits ........................................ 13

          i.  This Court Lacks Jurisdiction to Review DHS's Initiation of Removal Proceedings, and any Judicial Challenges to Removal Must be Brought in a Petition for Review ......................................................................... 13

            a.  The Court Lacks Jurisdiction under the APA ............................... 13

            b.  The Court Lacks Jurisdiction under 8 U.S.C. § 1252(g), as Amended by the REAL ID Act ..................................................... 14

            c.  Any Viable Claims Must be Channeled through Plaintiff's Removal Proceedings and not this Court ..................................... 18

          ii.  Nothing in the Constitution or APA Establishes a Right that Constrains DHS's Exercise of Discretion ............................................................. 20

            a.  Termination of DACA does not Infringe upon an Established Constitutional Interest ................................................................. 21

b.  Termination of DACA does not Infringe upon a Constitutional
Interest based on Entitlement ........................................................ 22

c.  The APA Affords Plaintiff no Actionable Interest Regarding the
Termination of DACA or Employment Authorization ................ 24

iii.  Plaintiff Cannot Overcome the Significant Facts Supporting the Decision
to Issue an NTA and Terminate his DACA and EAD ............................ 27

iv.  Plaintiff cannot Show Prejudice from the Termination of his DACA and
EAD, such that any Additional Process would have Achieved a
Different Outcome ................................................................................. 29

B.  The Remaining Preliminary Injunction Factors Favor Defendants ................. 31

CONCLUSION ................................................................................................ 32

# TABLE OF AUTHORITES

## CASES

*Acura of Bellevue v. Reich*,
  90 F.3d 1403 (9th Cir. 1996) ........................................................................... 19

*Aguilar v. Immigration & Customs Enf't*,
  510 F.3d 1 (1st Cir. 2007) ....................................................................... 18, 19

*Ahmed v. Gonzales*,
  447 F.3d 433 (5th Cir. 2006) ......................................................................... 22

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ....................................................................... 10

*Arizona v. United States*,
  132 S. Ct. 2492 (2012) ............................................................................... 2, 3

*Ashki v. INS*,
  233 F.3d 913 (6th Cir. 2000) ......................................................................... 22

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ............................................................................... 22, 23

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
  727 F.3d 917 (9th Cir. 2013) ............................................................... 22, 23, 24

*Cal. Wilderness Coal. v. U.S. Dept. of Energy*,
  631 F.3d 1072 (9th Cir. 2011) ....................................................................... 30

*Carranza, v. I.N.S.*,
  277 F.3d 65 (1st Cir. 2002) ..................................................................... 15, 19

*Chaudhry v. Holder*,
  705 F.3d 289 (7th Cir. 2013) ......................................................................... 3

*Chavez-Navarro v. Ashcroft*,
  57 F. App'x 349 (9th Cir. 2003) ..................................................................... 15

*Chemehuevi Indian Tribe v. Brown*,
   No. 16-CV-1347-JFW-MRWX, 2017 WL 2971864 (C.D. Cal. Mar. 30, 2017)...........26

*Colotl v. Kelly*,
   No. 1:17-CV-1670-MHC, 2017 WL 2889681 (N.D. Ga. June 12, 2017) ....................12

*De Mercado v. Mukasey*,
   566 F.3d 810 (9th Cir. 2009) .........................................................................................21

*Earth Island Inst. v. Carlton*,
   626 F.3d 462 (9th Cir. 2010) ....................................................................................10, 27

*Galbraith v. Cty. Of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002)..........................................................................................7

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) .........................................................................................10

*Garcia v. U.S. Att'y Gen.*,
   329 F.3d 1217 (11th Cir. 2003) ......................................................................................22

*Gerhart v. Lake Cnty., Mont.*,
   637 F.3d 1013 (9th Cir. 2011) ...................................................................................22, 24

*Glenn v. Newman*,
   614 F.2d 467 (5th Cir. 1980) ..........................................................................................22

*Gonzalez v. U.S. Dep't of Homeland Sec.*,
   No. 17CV1840 JM(NLS), 2017 WL 4340385 (S.D. Cal. Sept. 29, 2017)....................12

*Goss v. Lopez*,
   419 U.S. 565 (1975) ........................................................................................................23

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ..................................................................................................*passim*

*Henry Schein, Inc. v. Cook*,
   191 F. Supp. 3d 1072 (N.D. Cal. 2016).............................................................................9

*Hernandez v. Gonzales*,
  437 F.3d 341 (3d Cir. 2006) ...................................................................... 22

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ...........................................................*passim*

*Judulang v. Holder*,
  565 U.S. 42 (2011) ...................................................................................... 20

*Jupiter v. Ashcroft*,
  396 F.3d 487 (1st Cir. 2005) ....................................................................... 22

*Kaddoura v. Gonzales*,
  No. C06-1402 RSL, 2007 WL 1521218 (W.D. Wash. May 21, 2007) .......................... 21

*Kazarian v. U.S. Citizenship and Immigration Servs.*,
  596 F.3d 1115 (9th Cir. 2010) .................................................................... 30

*Khan v. Mukasey*,
  517 F.3d 513 (7th Cir. 2008) ....................................................................... 22

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ......................................................................... 7

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ....................................................................... 10

*Lyon v. U.S. Immigration & Customs Enf't*,
  171 F. Supp. 3d 961 (N.D. Cal. 2016) ........................................................ 30

*Mada-Luna v. Fitzpatrick*,
  813 F.2d 1006 (9th Cir. 1987) ..................................................................... 14

*Martinez v. Napolitano*,
  704 F.3d 620 (9th Cir. 2012) ....................................................................... 19

*Meghrig v. KFC W., Inc.*,
  516 U.S. 479 (1996) ..................................................................................... 10

*Mendez-Garcia v. Lynch*,
  840 F.3d 655 (9th Cir. 2016) ........................................................................22

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) .......................................................................................9

*Morales de Soto v. Lynch*,
  824 F.3d 822 (9th Cir. 2016) ........................................................................14

*Morrissey v. Brewer*,
  408 U.S. 471 (1972) .......................................................................................21

*Nken v. Holder*,
  556 U.S. 418 (2009) .......................................................................................31

*Paul v. Davis*,
  424 U.S. 693 (1976) .......................................................................................21

*PDK Laboratories Inc. v. U.S. D.E.A.,*
  362 F.3d 786 (D.C. Cir. 2004) ......................................................................30

*Perales v. Casillas*,
  903 F.2d 1043 (5th Cir. 1990) ......................................................................21

*Perry v. Sindermann*,
  408 U.S. 593 (1972) .................................................................................22, 23

*Pilapil v. INS*,
  424 F.2d 6 (10th Cir. 1970)
  *cert denied*, 400 U.S. 908 (1970) ................................................................21

*Quach v. Bank of Am.*, Nat. Ass'n,
  No. 12–5037 EJD, 2012 WL 4498873 (N.D. Cal. Sept. 28, 2012) ................11

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ..............................................................................*passim*

*Rodriguez v. Sessions*,
   No. 15-72487, 2017 WL 695192 (9th Cir. Feb. 22, 2017)..............................15

*Romeiro de Silva v. Smith*,
   773 F.2d 1021 (9th Cir. 1985)......................................................................... 15

*Salgado-Toribio v. Holder*,
   713 F.3d 1267 (10th Cir. 2013) ......................................................................22

*Samayoa-Martinez v. Holder*,
   558 F.3d 897 (9th Cir. 2009) ..........................................................................15

*Sanchez-Velasco v. Holder*,
   593 F.3d 733 (8th Cir. 2010) ..........................................................................22

*Senate of State of Cal. v. Mosbacher*,
   968 F.2d 974 (9th Cir. 1992) .......................................................................9, 12

*Shearer v. Bowen*,
   216 F.3d 1080 (5th Cir. 2000)......................................................................... 22

*Silva v. United States*,
   866 F.3d 938 (8th Cir. 2017) ..........................................................................17

*Singh v. Bardini*,
   No. 09-cv-3382, 2010 WL 308807 (N.D. Cal. Jan. 19, 2010) ......................14

*Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) ......................................12

*Singh v. Vasquez*,
   No. 08-cv-1901, 2009 WL 3219266 (D. Ariz. Sept. 30, 2009)
   aff'd 448 F. App'x 776 (9th Cir. 2011) ...........................................................14

*Sissoko v. Rocha*,
   509 F.3d 947 (9th Cir. 2007) ...................................................................16, 17

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ........................................................................................26

*Smith v. Ashcroft,*
  295 F.3d 425 (4th Cir. 2002) .......................................................................22

*Stanley v. Univ. of S. Cal.,*
  13 F.3d 1313 (9th Cir. 1994) ......................................................................10

*Tefel v. Reno,*
  180 F.3d 1286 (11th Cir. 1999) ..................................................................22

*Torres-Aguilar v. INS,*
  246 F.3d 1267 (9th Cir. 2001) ....................................................................17

*Univ. of Texas v. Camenisch,*
  451 U.S. 390 (1981) ......................................................................................9

*U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) .......................14

*Vilchiz-Soto v. Holder,*
  688 F.3d 642 (9th Cir. 2012) ......................................................................15

*Villa-Anguiano v. Holder,*
  727 F.3d 873 (9th Cir. 2013) ...............................................................20, 25

*Walters v. Reno,*
  145 F.3d 1032 (9th Cir. 1998) ....................................................................30

*Wayte v. United States,*
  470 U.S. 598 (1985) ..............................................................................15, 29

*Winter v. Nat'l Res. Def. Council,*
  555 U.S. 7 (2008) ................................................................................2, 9, 10

*WJA Realty Ltd. P'ship v. Nelson,*
  708 F. Supp. 1268 (S.D. Fla. 1989) ............................................................21

*Wong v. United States,*
  373 F.3d 952 (9th Cir. 2004) ......................................................................17

*Yuen Jin v. Mukasey*,
  538 F.3d 143 (2d Cir. 2008) .................................................... 22

*Zixiang Li v. Kerry*,
  710 F.3d 995 (9th Cir. 2013) ................................................. 17

*Zolotukhin v. Gonzales*,
  417 F.3d 1073 (9th Cir. 2005) .............................................. 29

**STATUTES**

5 U.S.C. § 701(a)(2) .................................................................. 13

5 U.S.C. § 702 ......................................................................... 13

5 U.S.C. § 704 ......................................................................... 13

5 U.S.C. § 706 ......................................................................... 30

5 U.S.C. § 706(a)(1) ................................................................ 17

5 U.S.C. § 706(2)(A) ............................................................... 13

5 U.S.C. § 706(2)(D) ............................................................... 13

8 U.S.C. § 1103(a)(1) ................................................................ 2

8 U.S.C. § 1182(a) ..................................................................... 2

8 U.S.C. § 1182(a)(6)(A)(i) ........................................................ 8

8 U.S.C. § 1227(a) ..................................................................... 2

8 U.S.C. § 1229(a) ................................................................... 14

8 U.S.C. § 1229a. .................................................................... 14

8 U.S.C. § 1252 ...................................................................... 17

8 U.S.C. § 1252(a)(2)(D) ................................................................20

8 U.S.C. § 1252(a)(5).................................................................*passim*

8 U.S.C. § 1252(b)(9).................................................................*passim*

8 U.S.C. § 1252(g) ......................................................................*passim*

8 U.S.C. § 1324 ..........................................................................8, 27

8 U.S.C. § 1324(a)(1)(A)(ii) ............................................................ 8

28 U.S.C. § 1361 ...........................................................................15

28 U.S.C. § 1651 ...........................................................................15

28 U.S.C. § 2241 ...........................................................................15

**REGULATIONS**

8 C.F.R. § 239.1(a).........................................................................25

8 C.F.R. § 274a.12(c)(14) ................................................................. 3

8 C.F.R. § 274a.14(a)(1)(ii) ......................................................... 1, 25

8 C.F.R. § 1003.13 ........................................................................... 1

8 C.F.R. § 1003.14 ........................................................................... 1

**ADMINSTRATIVE DECISION**

*Matter of Bahta*,
   22 I. & N. Dec. 1381 (BIA 2000) .................................................29

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 109-72, at 173 ........................................................... 1

**Introduction**

Plaintiff Jesús Alonso Arreola Robles, ("Plaintiff" or "Mr. Arreola") seeks the extraordinary remedy from this Court of reinstating his Deferred Action for Childhood Arrivals ("DACA") and employment authorization ("EAD") that were previously terminated following his arrest for engaging in criminal activity, including participating in the attempt to transport undocumented immigrants near the southern border of the United States. Dkt. No. 16-2, Memorandum of Law, at 7. Plaintiff's motion for a preliminary injunction requires this Court to reject decades of precedent to recognize alleged rights and privileges that have never existed for Plaintiff and similarly situated individuals. Plaintiff, who has benefitted from the Government's discretion to remain and work in the United States despite having no lawful status, had no ongoing expectation to the continuation of that grace.

Most importantly, Plaintiff's DACA was automatically terminated by the issuance of a Notice to Appear ("NTA") from the Department of Homeland Security ("DHS") sub-agency, U.S. Customs and Border Protection ("CBP"). Filing of the NTA with the appropriate Department of Justice (DOJ) immigration court commences removal proceedings, *see* 8 C.F.R. §§ 1003.13, 1003.14, and results in the immediate termination of employment authorization for aliens granted deferred action, whether through DACA or otherwise. *See* 8 CFR § 274a.14(a)(1)(ii). Plaintiff cannot challenge in district court the commencement of removal proceedings by attacking the consequential termination of his DACA or EAD grant. *See* 8 U.S.C. § 1252(g) (precluding judicial review in district court of "any cause or claim . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders . . . ."). Thus, to the extent Plaintiff has any viable legal claims arising from the "decision[s] or action[s]" of DHS in this case, they must be raised initially in immigration court and then, following administrative appeal, through a petition for review filed in the U.S. Court of Appeals for the Ninth Circuit. *See* U.S.C. § 1252(b)(9) (requiring that "[j]udicial review of all

questions of law and fact, including interpretation and application of constitutional and statutory provision, arising from any action taken or proceeding brought to remove an alien" must be made through a petition for review); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (applying this statutory channeling provision in the context of a Fifth Amendment claim).

In order to prevail on a motion seeking a preliminary injunction, Plaintiff "must establish" that he is likely to succeed on the merits of his claim, that he is likely to suffer irreparable harm if the injunction is not granted, that the balance of equities is in his favor, and that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008). Accordingly, Plaintiff cannot prevail on his motion because he is not likely to succeed in obtaining review of DHS' discretionary decision to issue an NTA to place him in removal proceedings, and thereby automatically terminate his DACA and related EAD. Moreover, to the extent Plaintiff asks the Court to grant a permanent injunction at this initial stage of proceedings requiring that Plaintiff's DACA and employment authorization – "remain valid until August 19, 2018, so long as Plaintiff continues to satisfy the eligibility requirements of the DACA program" – demands a mandatory injunction that impinges on Defendants discretion – for which Plaintiff cannot establish that the facts and the law "clearly favor" his position, which is in direct conflict with Supreme Court precedent.

## I.   Overview of Deferred Action and the DACA Policy

The Immigration and Nationality Act ("INA") charges the Secretary of Homeland Security "with the administration and enforcement" of the INA and "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Individuals are removable if, *inter alia*, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012); *see* 8 U.S.C. §§ 1182(a), 1227(a). The federal government cannot practicably remove every removable alien. Rather, "[a]

principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 132 S. Ct. at 2499. DHS, "as an initial matter, must decide whether it makes sense to pursue removal at all." *Id.* "At each stage the Executive has discretion to abandon the endeavor." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*"). Like other agencies exercising enforcement discretion, DHS must balance a number of factors that are within its expertise. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action is "a regular practice" in which the Secretary exercises her discretion "for humanitarian reasons or simply for [his] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*, 525 U.S. at 483-84; 8 C.F.R. § 274a.12(c)(14) ("an act of administrative convenience to the government which gives some cases lower priority"). Through "[t]his commendable exercise in administrative discretion, developed without express statutory authorization," *AADC*, 525 U.S. at 484 (citations omitted), a removable individual may remain present in the United States so long as DHS continues to forbear.

Deferred action does not confer lawful immigration status or provide any defense to removal. *Cf. Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013) (discussing the difference between "unlawful presence" and "unlawful status" as two distinct concepts). An individual with deferred action remains removable at any time, and DHS has the discretion to revoke deferred action unilaterally. *See AADC*, 525 U.S. at 484-85.

On June 15, 2012, DHS issued a memorandum entitled, "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" ("Napolitano Memo"). *See* Dkt. No. 16-13, Pl. Exhibit 9. That memorandum outlines a policy known as Deferred Action for Childhood Arrivals ("DACA") that is available to a certain subset of individuals unlawfully present in this country. The DACA Memo states, "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these

rights." *Id*. at 3. The memo does not address the topics of arrest by DHS or the grounds that DHS will consider in terminating deferred action. Rather, the memo directs U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") agents to "immediately exercise their discretion, on an individual basis" to determine whether to issue an NTA or defer action, without reference to whether an individual already has deferred action. *Id*. ("With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings."). Thus, CBP or ICE have discretion to issue an NTA if the facts and circumstances available at the time an alien is encountered counsel against the continuation of deferred action, including where there is a criminal offense or public safety concern presented. *Id.*

In mid-August 2012, USCIS published on its website a webpage entitled, "Frequently Asked Questions," which is now archived on the USCIS webpage. *See* Dkt. No. 16-23, Pl. Exhibit 19. These FAQs provide guidance on the DACA policy and state, "DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." *Id*. at Q:27. The FAQs also explain that the phrase "national security or public safety threat" includes but is not limited to "gang membership, participation in criminal activities, or participation in activities that threaten the United States." *See id.* at Q:65. The Form I-821D, entitled, "Instructions for Consideration of Deferred Action for Childhood Arrivals" states, "[i]ndividuals who receive deferred action will not be placed into removal proceedings or removed from the United States for a specified period of time, unless the Department of Homeland Security (DHS) chooses to terminate the deferral." *See* Exhibit A, Form I-821D Instructions (January 9, 2017 version, with no changes to the relevant content).

Through an internal guidance document entitled the "National Standard Operating

Procedures (SOP); Deferred Action for Childhood Arrivals (DACA)," USCIS has provided its officers with procedural guidance for terminating deferred action in three circumstances, one of which includes issuing a Notice of Intent to Terminate ("NOIT") and providing a chance for a DACA recipient to respond, and two in which such notice and an opportunity to respond is not required. *See* Dkt. No. 16-24, Pl. Exhibit F, National Standard Operating Procedures, Deferred Action for Childhood Arrivals ("SOP") (Aug. 28, 2013); *id.* at Appendix I.

Nothing in the Napolitano Memorandum limits CBP or ICE from exercising their authority to issue an NTA. Rather, pursuant to the DACA SOP and Appendix I, when *USCIS discovers* certain conduct that suggests DACA should be terminated, USCIS should refer such conduct to ICE, who may issue an NTA that automatically terminates DACA, with no additional notice or opportunity to respond. *See* Dkt. No. 16-24. USCIS then generally sends a "Notice of Action" to the individual informing him that his deferred action and employment authorization terminated automatically as of the date the NTA was issued. *Id.* at 42. This "Notice of Action" serves an administrative purpose to inform the DACA recipient that his DACA and employment authorization were already automatically terminated due to issuance of an NTA. The Notice of Action does not itself effectuate the termination of DACA and employment authorization.

On September 5, 2017, DHS announced a plan to end the DACA policy in an orderly fashion. *See* Dkt. No. 16-18, Pl. Exhibit 14, "Memorandum on Rescission of Deferred Action for Child Arrivals" from Elaine C. Duke, Acting Secretary of Homeland Security, to ICE, CBP, and USCIS (Sept. 5, 2017) ("Duke Memo"). The memorandum, *inter alia,* provides that DHS will "adjudicate – on an individual, case by case basis – properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents . . . from *current* beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017." *Id*. (emphasis added).

5:17-cv-2048-MWF-SHK

5

## II.   Factual Background

Plaintiff alleges he was granted deferred action and employment authorization pursuant to DACA in 2012 and again in 2014; and that he requested renewal of DACA in 2016 and was granted deferred action and employment authorization, effective through August 19, 2018. Dkt. No. 16-2 at 6. Plaintiff also acknowledges the DACA approval letter advises that "[s]ubsequent criminal activity" is likely to result in termination of deferred action. *Id*.

On the evening of February 11, 2017, stretching into the morning of February 12, BP agents were searching an area of El Cajon, California, near the United States/Mexico International Boundary (hereinafter "the border") known for unlawful border crossings, after finding indications that undocumented immigrants had likely recently crossed the border. *See* Exhibit B, DHS Memorandum of Investigation, Agent Statement of BP Agent F.O.,[1] dated February 12, 2017 ("F.O. Memo"); Exhibit C, DHS Memorandum of Investigation, BP Agent I.J., dated February 13, 2017 ("I.J. Memo").

Around midnight, the border patrol agents encountered Plaintiff behind the wheel of a "vehicle parked on the side of the road with its lights out." *Id*. The passenger in the vehicle, Mr. R., was later identified as an undocumented immigrant. *Id*. According to one agent, subsequent to encountering Plaintiff and Mr. R, four undocumented immigrants were detained in close proximity to Plaintiff's vehicle, and the "identified . . . smuggler for that event . . . shows a prior apprehension event" with Mr. R. *See* Exhibit D, DHS Report of Investigation, Border Patrol Agent A.R., dated February 12, 2017 ("A.R. Report"), at 4. CBP also positively linked Mr. R.'s phone to the smuggler's cell phone, and concluded Plaintiff and Mr. R. were likely present in that location to pick up the four undocumented immigrants. *Id*.

---

[1] Due to the public nature of this case, names of the federal agency agents and officers are redacted here and in the attached exhibits.

In his initial encounter with the agents, Plaintiff first stated "he picked up [Mr. R.] in El Cajon, California and was going to take him to Tijuana, Mexico." Exhibit C. However, Plaintiff "then changed his story and claimed that he was just going back home to Hollywood, California."[2] *Id.* Upon further questioning, Plaintiff stated he had just recently picked up Mr. R. "on the side of the road," that he knew Mr. R. was undocumented, and that Plaintiff "was going to get paid $100 USD to pick up an unknown amount of illegal aliens." *Id.*; *see also* Exhibit B. Because Plaintiff and Mr. R. gave conflicting stories, the Border Patrol agents arrested both men and transported them to a Border Patrol processing center, where both men separately waived their *Miranda* rights and were administered an oath before being interviewed. Exhibit C; Exhibit E, Transcript of Border Patrol Agent interview with Plaintiff on February 12, 2017, at 2-6; Exhibit F, Statement of Border Patrol Agent J.H. Regarding Recorded Statement, dated February 12, 2017 ("J.H. Statement").

In his recorded interview, under oath, and after going through a number of other stories, Plaintiff stated that he had been asked by a friend to pick up the friend's cousin, Mr. R, from a hotel in Sun Valley, California and drive the passenger to El Cajon to pick up the passenger's cousin and uncle.[3] *See* Exhibits E at 28-34, 37-40; F. Plaintiff admitted he was aware he was picking up undocumented immigrants. *Id.*; *see also* Exhibit D at 3.

---

[2] The Court may take judicial notice of the fact that Plaintiff's home in Hollywood, California is approximately 140 miles north of El Cajon, California, and the drive from one city to the other takes approximately three hours. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("[A] court may take judicial notice of 'matters of public record.'") (citation omitted).

[3] The Court may also take judicial notice of the fact that Sun Valley, California is near Plaintiff's home in Hollywood, California, thus also approximately 140 miles and 3 hours north of El Cajon, California, where Plaintiff first alleged to have picked up the passenger. *Lee*, 250 F.3d at 689. Plaintiff establishes a similar geographic setting in a declaration filed with his Complaint, wherein he states he drove "for about three and a half hours" to get from "Sun Valley, near North Hollywood" to "an address near San Diego," where, upon arrival, he was confronted by CBP. *See* Dkt. No. 16-3, Declaration of Jesus Alonso Arreola Robles, at ¶¶ 19, 20, 22. San Diego, California, is approximately 15 miles from El Cajon, California.

At the first encounter on the side of the road, Plaintiff told agents he was to be paid $100 for his services, *see* Exhibit C, but in his interview Plaintiff stated it was only $40, before ultimately admitting he was to receive $600 for making the trip. Exhibit E at 11, 18, 30, 39; Exhibit F. The Government declined to seek Plaintiff's criminal prosecution under 8 U.S.C. § 1324,[4] but CBP did initiate removal proceedings against him. Exhibit D at 4.[5]

On February 12, 2017, CBP issued Plaintiff an NTA charging him as inadmissible to the United States based on his presence without admission or parole pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *See* Exhibit G, Form I-862, Notice to Appear, dated February 12, 2017 (date stamped as filed with the Immigration Court on February 23, 2017); *see also* Dkt. No. 16-11, Pl. Exhibit 7, Form I-213 Record of Deportable/Inadmissible Alien, dated February 13, 2017, at 8 ("Arreola was processed administratively for [8 U.S.C. § 1324] Alien Smuggling. Arreola has been approved as a Federal Interest Removal by San Diego Sector Chief Patrol Agent R[.] B[].").

On March 2, 2017, an immigration judge held a custody determination hearing and granted Plaintiff release from immigration detention on $2,500 bond.[6] Dkt. 16-10, Pl. Exhibit 10, Bond Hearing Transcript at 59. On March 6, 2017, Plaintiff received a Notice of Action from USCIS, notifying him that his DACA and EAD were "terminated

---

[4] 8 U.S.C. § 1324(a)(1)(A)(ii) provides criminal penalties for "[a]ny person who[,] knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law; . . . (v)(I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the commission of any of the preceding acts . . . ."

[5] Plaintiff now alleges another new version of the facts in his sworn declaration. Plaintiff claims a friend offered him $600 to drive the friend's cousin from the Los Angeles area to the San Diego area to pick up the friend's uncle and another cousin, and bring them back to the Los Angeles area. Dkt. No. 16-2 at 7. Plaintiff now asserts the person he picked up, arguably Mr. R, entered an address near San Diego, California, into Plaintiff's GPS and Plaintiff drove them there without knowing where he was going or that the people he was picking up were undocumented immigrants. *Id.*

[6] As explained in greater detail below in Section II(B)(ii)(b)(5), the transcript of the bond hearing shows Plaintiff misrepresented to the immigration judge a number of key facts regarding his interviews with the CBP agents on the night of his arrest.

5:17-cv-2048-MWF-SHK

automatically as of the date [his] NTA was issued." *See* Dkt. No. 16-12, Pl. Exhibit 8, U.S. Citizenship and Immigration Services, *Notice of Action to Jesus Alonso Arreola Robles Re I-821D, Deferred Action for Childhood Arrivals*, dated Mar. 6, 2017.

Eight months later, on October 5, 2017, Plaintiff filed a Complaint seeking an order restoring his DACA and employment authorization, and requiring Defendants to provide him with a further explanation for their decision and an opportunity to respond. *See* Dkt. No. 1. On October 18, Plaintiff filed a Motion for Preliminary Injunction, seeking to vacate Defendants' termination of his DACA and EAD, or in the alternative, order Defendants to temporarily reinstate his DACA and EAD and provide him an opportunity to challenge the termination of his DACA. *See* Dkt. Nos. 16, 16-2.

## ARGUMENT

### I.   Standards of Review

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). As a result, it is generally inappropriate at the "preliminary-injunction stage to give a final judgment on the merits." *Id.*; *see Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) (holding that "judgment on the merits in the guise of preliminary relief is a highly inappropriate result").

An injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 142 (2010). A plaintiff seeking a preliminary injunction "must establish" that: (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016) ("The applicable legal standard for a motion for a temporary restraining order is the same as that for a motion for a preliminary injunction."). Preliminary injunctive relief is an extraordinary remedy never awarded as

5:17-cv-2048-MWF-SHK

of right, *Winter*, 555 U.S. at 20, and the party seeking such relief bears the burden of establishing the prerequisites to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

Alternatively, a party must show "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," as well as a likelihood of irreparable harm, and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Showing "serious questions going to the merits" requires a plaintiff to demonstrate a "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011).

Finally, to the extent that Plaintiff seeks an injunction that "orders a responsible party to 'take action'," *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996), it is a mandatory injunction. When granting mandatory injunctive relief, "courts should be extremely cautious" and will apply a heightened standard in reviewing whether a plaintiff has established a basis for injunctive relief. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (internal citations omitted). Mandatory injunctions "go[ ] well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Id.* at 1320 (internal citations omitted). In a mandatory injunction request, a moving party "must establish that the law and facts *clearly favor* [their] position, not simply that [they] [are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## II.  Plaintiff Cannot Sustain the Requirements for Preliminary Relief.

The factors to grant a preliminary injunction are not met here. To start, Plaintiff cannot show irreparable harm from the loss of a peripheral benefit in work authorization that he failed to challenge for eight months. Nor can he establish a likelihood of success on the merits of his claim, or that the facts and law clearly favor his position, for two important reasons. The first is that, regardless of how Plaintiff frames his argument, both the APA and REAL ID Act preclude judicial review of the Secretary's discretionary decisions, including the decision to initiate removal proceedings and to terminate a grant

of deferred action. Further, any viable claim Plaintiff *may* have related to his removal proceedings, including any constitutional challenges, can only be raised in immigration court, and, if requested, through appeal to the Board of Immigration Appeals and then the appropriate circuit court. Second, even if this Court were to find jurisdiction to consider Plaintiff's claims, Plaintiff can establish no procedural or constitutional right to the additional process he now seeks. Moreover, any procedural failings would not prejudice Plaintiff where he was caught and admitted to engaging in criminal activity. Where Plaintiff has offered no evidence or argument to overcome the facts of his criminal activity, he cannot show that the law and facts clearly favor his position or that there he is likely to succeed on his claim that his DACA was wrongfully terminated.

### A.    Plaintiff Cannot Demonstrate Imminent, Irreparable Harm.

The harm that Plaintiff alleges in support of his motion arises from the alleged loss of opportunity to maintain employment through his EAD, which terminated along with his DACA following issuance of the NTA in February 2017. Dkt. No. 16-2 at 21-22. The Court should deny Plaintiff's motion at the outset because the imminence of the harm Plaintiff cites is doubtful given the period of time that has elapsed between his loss of employment authorization and the filing of this action. *See, e.g., Quach v. Bank of Am., Nat. Ass'n*, No. 12–5037 EJD, 2012 WL 4498873, at *4 (N.D. Cal. Sept. 28, 2012) (finding that an ex parte temporary restraining order to enjoin a foreclosure sale was not justified where plaintiffs were aware for months of the potential trustee's sale). Defendants terminated Plaintiff's DACA eight months ago, and Plaintiff's failure to raise this action until now casts doubt on his claims of urgent, irreparable harm unless his DACA and employment authorization are reinstated immediately. *See, e.g.*, Dkt. No. 16-2 at 27 ("Time without DACA is 'productive time irretrievably lost' that Mr. Arreola could be spending in his chosen career path . . . .").

In addition, the degree of harm Plaintiff alleges stretches beyond the relief provided by an order maintaining the status quo. Plaintiff asks this Court to grant him a

*permanent* enjoinder against Defendants terminating his DACA for the remainder of its full term. *See* Dkt. No. 16-2 at 7 (emphasis added). While this request for complete relief is already inappropriately raised in a motion for preliminary injunction, *see Mosbacher*, 968 F.2d at 978, Plaintiff conflates even the temporary and already extraordinary remedy of a preliminary, mandatory injunction—one reinstating his DACA for the time necessary to reach the merits of his claims—with a form of permanent relief he would not receive even under the most optimal outcome on the merits. Were the Court to conclude, as the courts in *Colotl* and *Gonzalez* did, that it has the jurisdiction to review the procedural steps leading to a DACA termination, but not the decision itself, the most relief the Court could grant is an order to Defendants to cure what the Court interprets as procedural defects in the termination process. *See Colotl v. Kelly*, No. 1:17-CV-1670-MHC, 2017 WL 2889681, at *9 (N.D. Ga. June 12, 2017) ("[Section] 1252(g) strips this Court of jurisdiction to review the government's ultimate discretionary determination as to Plaintiff's DACA status."); *see also Gonzalez v. U.S. Dep't of Homeland Sec.*, No. 17CV1840 JM(NLS), 2017 WL 4340385, at *4 (S.D. Cal. Sept. 29, 2017) (finding the same).[7]

   Thus, the irreparable harm Plaintiff claims of not having his DACA through August 2018 is overstated at best.

---

[7] Plaintiff's reliance on *Colotl v. Kelly* is misplaced. *See, e.g.,* Dkt. No. 16-2, at 2, 4, 17, 22. *Colotl* is distinguishable. In addition to being wrongly decided, the termination of DACA there did not result from the issuance of a Notice to Appear ("NTA"). However, here, Plaintiff's DACA was automatically terminated by the issuance of an NTA, a process squarely supported by relevant procedures. The only other matter raised by Plaintiff, *Gonzalez*, 2017 WL 4340385, while factually similar to the present matter, is also inapposite and wrongly decided. Defendants dispute that court's findings, and specifically note that the court's interpretation of 8 U.S.C. § 1252(b)(9) and reliance on *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) are contrary to *J.E.F.M.*, discussed below. Defendants also note that the court there buffered Gonzalez's irreparable harm claim as stemming from the announced winding down of DACA which compromised his ability to request an extension of DACA prior to October 5, 2017. 2017 WL 4340385 at *6-7. Here, Plaintiff's delayed claim of irreparable harm lacks the urgency the *Gonzalez* court interpreted on those facts.

5:17-cv-2048-MWF-SHK

**B.     Plaintiff is not Likely to Succeed on the Merits.**

Whether viewed as a preliminary or permanent injunction, the Court cannot grant Plaintiff relief because he cannot succeed on the merits of his claims. First, this Court lacks jurisdiction to review Plaintiff's challenge to CBP's discretionary determination to issue him an NTA, which had the result of terminating his DACA. Additionally, nothing in the APA or constitutional jurisprudence establishes a right to review or constrain DHS's exercise of discretion or to grant Plaintiff procedural rights other than those available to him through his removal proceedings. Finally, even if Plaintiff had a viable claim subject to review in this Court, he has failed to offer sufficient evidence to show he is likely to succeed on the merits.

### i.  This Court Lacks Jurisdiction to Review DHS's Initiation of Removal Proceedings, and any Judicial Challenges to Removal Must be Brought in a Petition for Review.

#### a.  The Court Lacks Jurisdiction under the APA.

The APA permits persons aggrieved by final agency action to obtain judicial review in federal court where "there is no other adequate remedy in a court." *See* 5 §§ U.S.C. 702, 704. A reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). However, the APA also precludes judicial review of agency decisions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In *Heckler v. Chaney*, the Supreme Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." 470 U.S. 821, 832 (1985).

Individual DACA decisions fall squarely within that category of agency discretion. A decision to defer action is committed to agency discretion by law because notifying an alien that DHS has decided to forbear from removing him for a designated period is an exercise of prosecutorial discretion, and a court has no meaningful standard against which to judge the agency's exercise of discretion to forbear from enforcement for that period.

*See Heckler*, 470 F.3d at 830; *see also Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016) (noting that "the exercise of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention").[8] Argument pursuant to *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), that Defendants failed to follow their own procedures does not help Plaintiff because the *Accardi* doctrine is inapplicable in the context of internal operating guidelines that preserve the exercise of agency discretion. *See Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1009 (9th Cir. 1987) (finding amended Operating Instructions were "general statements of policy" because the instructions preserved the agency's flexibility and opportunity to make discretionary determinations); *id.* ("a directive must not establish a binding norm and must leave agency officials free to consider the individual facts in the various cases that arise and to exercise discretion") (internal citations and quotations omitted).

For these reasons, Plaintiff cannot establish any likelihood of success on the merits. The APA specifically precludes review of the action that Plaintiff challenges – the discretionary decision to issue an NTA and terminate Plaintiff's DACA and EAD. Moreover, as the challenged action is discretionary, there is no law to apply.

### b. The Court Lacks Jurisdiction under 8 U.S.C. § 1252(g), as Amended by the REAL ID Act.

The issuance of an NTA to an alien is a necessary predicate step to commencing removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1229(a). Through the INA, as amended by the REAL ID Act of 2005 and codified at 8 U.S.C. § 1252(g), Congress explicitly precluded judicial review of any challenge arising from any decision or action to commence removal proceedings. That statute states, in relevant part:

---

[8] Plaintiff's reliance on cases that discuss violations of non-discretionary procedures in agency regulations are inapposite where deferred action and related employment authorization are entirely discretionary concepts not tied to statute or regulation. *See* Dkt. No. 16-2 at 18, 20, *citing Singh v. Bardini*, No. 09-cv-3382, 2010 WL 308807, at *7 (N.D. Cal. Jan. 19, 2010) & *Singh v. Vasquez*, No. 08-cv-1901, 2009 WL 3219266, at *5 (D. Ariz. Sept. 30, 2009), aff'd 448 F. App'x 776 (9th Cir. 2011).

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).[9] The Supreme Court explained that § 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.

Applying 8 U.S.C. § 1252(g), the Ninth Circuit has held there is no subject matter jurisdiction to review a decision to grant DACA. *See, e.g., Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012); *Rodriguez v. Sessions*, No. 15-72487, 2017 WL 695192, at *1 (9th Cir. Feb. 22, 2017).[10] This precedent applies to the present case and precludes judicial review of the decision to issue an NTA, which terminated Plaintiff's DACA, and which was a predicate step to commencing removal proceedings. *See*, *e.g*., *Samayoa-Martinez v. Holder*, 558 F.3d 897, 901-02 (9th Cir. 2009).

Plaintiff may contend that the present case is distinguishable from these earlier cases because it involves the Government's decision to issue an NTA, and thereby terminate DACA, rather than a determination as to whether an individual is considered for DACA in the first place. But nothing in the language of 8 U.S.C. § 1252(g) supports

---

[9] For example, courts lack jurisdiction to review the timing of the commencement of removal proceedings. *See Chavez-Navarro v. Ashcroft*, 57 F. App'x 349 (9th Cir. 2003). Moreover, "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488, 491.

[10] This authority is consistent with earlier case law interpreting the 1981 Operating Instructions, a previous policy that provided guidelines for the exercise of deferred action. That authority concluded that district courts lack jurisdiction to review the district director's decision not to recommend deferred action. *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985); *see also Carranza*, *v. I.N.S.*, 277 F.3d 65, 72 (1st Cir. 2002) (supporting "general proscription against judicial review of *any* aspect" of prosecutorial deliberations) (citing *Wayte v. United States*, 470 U.S. 598, 607-8 (1985)). Neither Plaintiff nor any recent court to address these issues has distinguished DHS's guidance regarding the DACA policy from the 1981 Operating Instructions.

such a distinction and both decisions are similar in the relevant respect – they both involve the exercise of prosecutorial discretion. Congress had no reason to preclude judicial review of the favorable exercise of prosecutorial discretion (where individuals self-select whether to request DACA in light of agency guidelines) while permitting judicial review of an agency's decision to issue an NTA so that it may commence removal proceedings and thereby terminate DACA (where the agency weighs competing factors and allocates its resources). *See Heckler*, 470 U.S. at 831 (discussing the Executive's discretion to spend resources on "this violation or another"). If anything, the decision to issue an NTA, which results in termination of DACA, is more closely connected with the central purpose of 8 U.S.C. § 1252(g) – to prevent "judicial constraints on prosecutorial discretion." *See AADC*, 525 U.S. at 485 n.9. Thus, decisions to issue an NTA and thereby terminate DACA are even further outside the scope of judicial review than determinations of whether to grant DACA in the first place.

Additionally, the Court should reject, as contrary to 8 U.S.C. § 1252(g), Plaintiff's attempt to frame his challenge of the Government's decision to initiate removal proceedings as a challenge to the decision-making process to terminate his DACA. Section 1252(g) is not limited to claims arising from the adjudication of cases. It broadly precludes judicial review of "cause[s] or claim[s]" that arise from the decision "or action" to "commence proceedings" against any alien. *See, e.g., Sissoko v. Rocha*, 509 F.3d 947, 948-50 (9th Cir. 2007) (finding claim of money damages arose from decision or action to commence removal proceedings and was, thus, barred by 8 U.S.C. § 1252(g)).[11] To hold

---

[11] In *Sissoko*, the Ninth Circuit held that because the plaintiff's detention arose from the decision to commence removal proceedings, *Bivens* jurisdiction was barred by 8 U.S.C. § 1252(g). *Sissoko*, 509 F.3d at 949. The court distinguished between these types of claims and those raised in an earlier Ninth Circuit case discussing 8 U.S.C. § 1252(g), *Wong v. United States*, 373 F.3d 952 (9th Cir. 2004). *Id*. In *Wong*, the plaintiff's counsel expressly disclaimed any challenge to the execution of removal and explained that her claims only implicated "actions other than that removal, or the commencement of proceedings . . . ." 373 F.3d at 964 (emphasis original). Thus, the claims at issue in *Wong* did not implicate the agency's prosecutorial discretion and did not pose a threat of "obstruction of the institution of removal proceedings

5:17-cv-2048-MWF-SHK

otherwise would render 8 U.S.C. § 1252(g) a dead letter because any alien could seek to enjoin or otherwise challenge the commencement of removal proceedings through this type of creative pleading. Lastly, Plaintiff's claims under the APA are barred by 8 U.S.C. § 1252(g) regardless of whether they challenge nondiscretionary rather than discretionary duties, because 8 U.S.C. § 1252(g) does not distinguish between discretionary and nondiscretionary duties.[12] *See Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (rejecting contention that § 1252(g) applies only to discretionary decisions of the Secretary, emphasizing that § 1252(g), by its plain language, "makes no distinction between discretionary and nondiscretionary decisions"); *see also Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001) (holding that "a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking [a claim] in constitutional garb" or "through the facile device of re-characterizing" claims to avoid a clear jurisdictional bar).

In sum, regardless of how Plaintiff seeks to frame the issue, 8 U.S.C. § 1252(g) precludes judicial review of the Government's exercise of its prosecutorial discretion. Accordingly, the decisions of DHS to issue an NTA and place Plaintiff in removal proceedings, and thereby terminate DACA, are not subject to judicial review, and the Court should reject Plaintiff's motion for preliminary relief.

---

or the execution of removal orders . . . ." *Id*. at 970. *Wong* is clearly distinguishable from the present case in which Plaintiff is directly challenging the decision to issue an NTA, which terminated DACA and initiated the commencement of removal proceedings. As a result, his claims are barred by 8 U.S.C. § 1252(g). *See Sissoko*, 509 F.3d at 949.

[12] To be sure, in other contexts, courts distinguish between discretionary and nondiscretionary duties. For example, under 5 U.S.C. § 706(a)(1), a plaintiff can assert an APA claim (akin to a mandamus claim) seeking to compel an agency to perform a duty but only if it is a duty compelled by statute (that is, a matter over which the agency has no discretion). *See, e.g., Zixiang Li v. Kerry*, 710 F.3d 995, 1003 (9th Cir. 2013). Similarly, there are additional jurisdictional bars contained in different subsections of 8 U.S.C. § 1252. *See AADC*, 525 U.S. at 486 ("[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation.") (emphasis omitted).

### c.  Any Viable Claims Must be Channeled through Plaintiff's Removal Proceedings and not this Court.

To the extent Plaintiff has any viable claims, the REAL ID Act, codified in 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), bar him from raising his claims in district court. Under a statutory scheme designed to "put an end to the scattershot and piecemeal nature of the review process," all claims arising from removal proceedings must be raised in immigration court and channeled through the petition for review process. *Aguilar v. Immigration & Customs Enf't*, 510 F.3d 1, 9-10 (1st Cir. 2007). The Ninth Circuit has affirmed this channeling requirement without exception. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016). Section 1252(a)(5), entitled "[e]xclusive means of review," requires that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) provides "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added); *see, e.g., J.E.F.M.*, 837 F.3d at 1038 (explaining that, even if never raised in removal proceedings, a court of appeals has the authority to resolve questions of constitutional rights).

These channeling provisions are not limited to challenges to final orders of removal but preclude review in district court of "any" challenge "arising from any action" taken to remove an alien. *See J.E.F.M.*, 837 F.3d at 1031. The second sentence of Section 1252(b)(9) explicitly precludes jurisdiction to review (i) orders, "or [(ii)] such questions of law or fact." *Id*. The questions of law and fact described in the preceding sentence modify those "arising from any action taken or proceeding brought to remove an alien from the United States." *Id*. Thus, claims arising from "any action taken" to remove an alien from the United States – including the decision to issue an NTA, a necessary action toward commencing removal proceedings, and one that automatically terminates DACA –

are channeled through the petition for review process and cannot be brought in federal district court. To hold otherwise would effectively excise the words "any action taken" from the statute. *See Aguilar*, 510 F.3d at 10; *cf. Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (in the context of an APA claim, ignoring how claim "is framed" for purposes of determining whether claim must be channeled through the petition for review process). Congress's intent was simple: if the issue is one that can be raised in removal proceedings, and ultimately in a petition for review, then the statute precludes district court review). *See J.E.F.M.*, 837 F.3d at 1034 (citing H.R. Rep. No. 109-72, at 173 (statute was "intended to preclude all district court review of any issue raised in a removal proceeding)); *cf. Aguilar*, 510 F.3d at 9-10 ("Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process. . . .").

This approach effectuates the general rule precluding simultaneous review of a question by both an administrative body and a federal court. *See Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408-9 (9th Cir. 1996). Moreover, there is no "general constitutional right" for an alien to review prosecutorial deliberations in order to avert or prevent removal proceedings. *See Carranza,* 277 F.3d at 72, citing *AADC*, 525 U.S. at 487-92.

Here, despite framing his argument as a challenge to his DACA termination, Plaintiff challenges the Secretary's discretionary decision to issue an NTA, which had the effect of terminating his DACA. *See* Dkt. No. 16-2 at 7, 28 ("Mr. Arreola respectfully asks this Court to . . . vacate Defendants' unlawful revocation of his DACA and work permit . . . ."). Specifically, Plaintiff argues he has constitutional and procedural interests in deferred action and in employment authorization that are protected by due process and the APA. *Id*. at 21-22. But where Plaintiff challenges Defendants' exercise of prosecutorial discretion to issue an NTA – a predicate step in commencing removal proceedings – which has the effect of terminating deferred action and, upon filing with the immigration court, employment authorization, his challenge necessarily arises from "action taken or proceedings brought to remove an alien." *See* 8 U.S.C. §§ 1252(a)(5);

1252(b)(9). In fact, he is challenging the very validity of the "proceedings." *See AADC*, 525 U.S. at 484-85 (explaining what deferred action is).[13]

The Ninth Circuit held that taken together, 8 U.S.C. §§ 1252(a)(5) and (b)(9) "mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through the PFR process." *J.E.F.M.*, 837 F.3d at 1031 (emphases in original). Plaintiff may prefer that his constitutional claims be resolved now rather than at a later date, but his preference provides no basis for this Court to exercise jurisdiction over claims that are subject to a statutory channeling provision. *See id.* at 1035-36, 1038.

By arguing that Plaintiff is constitutionally entitled to deferred action (*i.e.*, that DHS must defer acting to remove him) he is, by definition, arguing that DHS is barred from acting to remove him. Those claims, at least in these circumstances, must be channeled through petitions for review. *See AADC*, 525 U.S. at 485 n.9.

### ii. Nothing in the Constitution or APA Establishes a Right that Constrains DHS's Exercise of Discretion.

Even if this Court finds that the INA's jurisdiction-stripping and channeling provisions might not preclude review of Plaintiff's claims, the Court should still deny Plaintiff's motion for injunctive relief because Plaintiff's merits claims fail as a matter of law. Here, Plaintiff can establish neither a constitutional nor an administrative right to receive any process regarding the termination or denial of DACA because deferred action is necessarily an exercise of the Executive's prosecutorial discretion. In fact, DHS acted based on that discretion by issuing an NTA based on factors involving Plaintiff's

---

[13] For these reasons, Plaintiff's reliance on *Judulang v. Holder*, 565 U.S. 42, 55 (2011) and *Villa-Anguiano v. Holder*, 727 F.3d 873 (9th Cir. 2013), to support his constitutional claims is misplaced. Dkt. No. 16-2 at 14. While the courts reviewing final orders of removal can consider the application of due process with regard to an exercise of discretion, Congress specifically gave circuit courts that authority pursuant to 8 U.S.C. § 1252(a)(2)(D) to consider "constitutional claims or questions of law raised upon a petition for review."

criminal activity, which put Plaintiff into removal proceedings and had the effect of terminating his DACA. *See* Dkt. Nos. 16-7, 16-11, 16-12.

> **a. Termination of DACA does not Infringe upon an Established Constitutional Interest.**

First, the mere fact that an individual alleges an injury does not result in a loss of liberty. *Paul v. Davis*, 424 U.S. 693, 712 (1976). The cases on which Plaintiff relies to support an infringement on his liberty interest are inapposite. In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court considered the right of parolees to remain at liberty as long as the conditions of parole were not violated. However, Plaintiff cannot allege that his actual liberty is presently at issue.

Plaintiff's claims regarding the right to support his family conflict with the Ninth Circuit's determination that there is no "right to family unity" to reside in the United States "simply because other members of their family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 (9th Cir. 2009). The same goes for Plaintiff's claims regarding the right to earn a livelihood because there is no recognized right of aliens to work in the United States without authorization. *See Pilapil v. INS*, 424 F.2d 6, 11 (10th Cir. 1970), *cert denied*, 400 U.S. 908 (1970); *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1273 (S.D. Fla. 1989) (holding that noncitizens do not have a constitutional right to work without authorization). Thus, there is no judicial review of the decision to terminate work authorization. *See Perales v. Casillas*, 903 F.2d 1043, 1047-48 (5th Cir. 1990) ("[T]here is nothing in the [INA] expressly providing for the grant of employment authorization . . . . to aliens who are the beneficiaries of approved petitions") (vacating the challenged portion of the injunction); *see, e.g., Kaddoura v. Gonzales*, No. C06-1402 RSL, 2007 WL 1521218, at *4-5 (W.D. Wash. May 21, 2007) (finding a lack of judicial review). As a matter of law, a plaintiff cannot assert an established constitutional right to DACA or work authorization.

### b.  Termination of DACA does not Infringe upon a Constitutional Interest based on Entitlement.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of *entitlement* to it." *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (underscoring that aliens cannot claim a cognizable due process interest in discretionary immigration relief or benefits).[14] The Supreme Court has held that even a practice of "generously" granting a "wholly and *expressly* discretionary state privilege" does not create a legal entitlement to that benefit. *See Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1020-21 (9th Cir. 2011) ("A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government.") (citations omitted).

A property interest subject to procedural due process protection may arise where such interest is secured by "existing rules or understandings that stem from an independent source . . . ." *Roth*, 408 U.S. at 577. The independent source can be a statute, *see Goss v. Lopez*, 419 U.S. 565, 572-73 (1975); a regulation, *see Glenn v. Newman*, 614 F.2d 467, 471-72 (5th Cir. 1980), *overruled on other grounds by Shearer v. Bowen*, 216 F.3d 1080 (5th Cir. 2000); an express or implied contract, *see Perry v.*

---

[14] The Ninth Circuit is not alone in finding aliens lack a cognizable Fifth Amendment due process interest in any form of discretionary immigration relief or benefit. *See, e.g.*, *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013); *Sanchez-Velasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010); *Yuen Jin v. Mukasey*, 538 F.3d 143, 156-57 (2d Cir. 2008); *Khan v. Mukasey*, 517 F.3d 513, 518 (7th Cir. 2008); *Ahmed v. Gonzales*, 447 F.3d 433, 440 (5th Cir. 2006); *Hernandez v. Gonzales*, 437 F.3d 341, 345-46 (3d Cir. 2006); *Jupiter v. Ashcroft*, 396 F.3d 487, 492 (1st Cir. 2005); *Garcia v. U.S. Att'y Gen.*, 329 F.3d 1217, 1224 (11th Cir. 2003); *Smith v. Ashcroft*, 295 F.3d 425, 429-30 (4th Cir. 2002); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000); *see also Tefel v. Reno*, 180 F.3d 1286, 1301 (11th Cir. 1999) ("awarding and then revoking discretionary relief does not offend due process").

5:17-cv-2048-MWF-SHK

*Sindermann*, 408 U.S. 593, 601-02 (1972); or a mutually explicit understanding. *Id.* at 602-03. In a pair of companion cases handed down the same day, the Supreme Court explained that "government employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." *Blantz*, 727 F.3d at 922-23 (comparing *Roth*, 408 U.S. 576-78, with *Perry,* 408 U.S. at 599-603).

For example, when a professor sued for deprivation of property without due process after his employment contract was not renewed, the Court found that the professor lacked a protected property interest in his continued employment because his employment contract was for a fixed one-year term. *Blantz*, 727 F.3d at 922-23 (citing *Roth*, 408 U.S. at 566). Similarly, when a nurse sued over her termination, relying on orientation documents that stated "termination *can* occur as a result of the performance review procedures" detailed in the document, the Ninth Circuit concluded she lacked a property interest in her continued employment because the documents "do not guarantee that every termination *must* be preceded by a peer review process or any other specified departmental procedures." *Id.* at 924.

Similarly, nothing in the DACA memoranda, public Q&A, or the DACA SOP indicate any promise of benefits or entitlement to initial or continuing deferred action or DACA-based employment authorization. *See, e.g.,* Dkt. No. 16-23 (USCIS FAQ) ("DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion."). Here, the DACA guidance and policies made clear that a recipient of DACA has no constitutionally protected interest in the continuation of DACA or a constitutionally protected interest in notice prior to termination. Specifically, the 2012 Memorandum states, "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Dkt. No. 16-13. In addition, the USCIS FAQs specifically state that

deferred action can be terminated before it expires, explaining, "DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." Dkt. No. 16-23 at Q:27. The USCIS FAQs further explain that the phrase "national security or public safety threat" includes but is not limited to "gang membership, *participation in criminal activities*, or participation in activities that threaten the United States." *See id.* at Q:65 (emphasis added).[15] Reading these documents in context, a DACA recipient does not have a protected property interest in the continuation of his or her DACA or DACA-based employment authorization. *Gerhart*, 637 F.3d at 1020-21. These policies and guidance are consistent with longstanding authority regarding the exercise of prosecutorial discretion in the context of immigration law. *See AADC*, 525 U.S. at 484 (recognizing that deferred action is a "commendable exercise in administrative discretion, developed without express statutory authorization").

Accordingly, the Court should deny Plaintiff's motion for emergency relief because his claims fail as a matter of law.

### c.   The APA Affords Plaintiff no Actionable Interest Regarding the Termination of DACA or Employment Authorization.

Assuming jurisdiction *arguendo*, there is no basis to conclude that Defendants failed to comply with any procedures requiring notice to a DACA recipient before issuing an NTA that terminates DACA, or to issue a notice of the termination of that DACA. The USCIS FAQ specifically states that DACA "may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." Dkt. No. 16-23 at Q:27. Contrary to Plaintiff's assertions, while USCIS procedural guidance provides generally for a review process in certain circumstances when USCIS terminates deferred action, when DHS terminates deferred action through the issuance of an NTA,

---

[15] Although criminal activity "*can*" result in termination, it is not the case that "every termination *must* be preceded" by criminal activity. *See Blantz*, 727 F.3d at 924. The Government retains the discretion to terminate DACA for other reasons.

there is no requirement to provide notice or an opportunity to respond. *See* Dkt. No. 16-2 at 25.

For example, where CBP or ICE issues a Notice to Appear, the DACA SOP provides that DACA and the EAD terminate automatically.[16] Dkt. No. 16-24 at 38, 42. CBP or ICE may decide to issue an NTA, and USCIS will generally issue a Notice of Action informing the individual that his DACA and Employment Authorization Document terminated automatically due to the NTA. Dkt. No. 16-24 at 42 ("On [Date NTA served on alien], [ICE] issued you a Notice to Appear (NTA). . . . USCIS is notifying you that your deferred action as a childhood arrival and your employment authorization terminated automatically as of the date your NTA was issued."). The determination to issue the NTA remains within the discretion of the agency. 8 C.F.R. § 239.1(a) ("Any immigration officer, or supervisor thereof, performing an inspection of an arriving alien at a port-of-entry may issue a notice to appear to such alien."); *see*, *e.g*., *Villa-Anguiano*, 727 F.3d at 878 (discussing historic roots of this discretion).

Plaintiff's argument that DHS internal procedures require notice and an opportunity to respond in every DACA termination is incorrect, and it is based on a selective interpretation of those procedures. *See, e,g,*. Dkt. No. 16-2 at 9, 13. Importantly, the DACA SOP was written by USCIS for USCIS agents and officers, and it does not encroach on the authority of ICE or CBP to arrest, detain, or issue an NTA to an individual. *Id*. at 9, citing Dkt. No. 16-24 at 16 ("This SOP describes the procedures Service Centers are to follow when adjudicating DACA requests."). In defining DACA policy, the 2012 DHS memorandum instructed ICE and CBP to "immediately exercise their discretion on an individual basis" in determining when to issue an NTA or defer

---

[16] While the DACA SOP states the EAD terminates when the NTA is issued, the EAD regulation states EAD termination occurs when the NTA is served on an immigration court. 8 C.F.R. § 274a.14(a)(1)(ii). Here, the NTA issued on February 12, 2017, the NTA was served on the immigration court on February 23, and Plaintiff received the Notice of Action informing him his DACA and EAD terminated on March 6. Thus, any discrepancy between the SOP and the regulation did not impact Plaintiff.

action. Dkt. No. 16-13. Defendant DHS's reading of its own authority to provide for automatic termination of DACA with the issuance of NTAs is well supported by Defendant's consistent practice, and is thus "entitled to substantial weight." *See* Exhibit H, Declaration of Ron Thomas at ¶ 4; *Chemehuevi Indian Tribe v. Brown*, No. EDCV161347JFWMRWX, 2017 WL 2971864, at *8 (C.D. Cal. Mar. 30, 2017) ("The agency's consistent practice of approving compacts with duration provisions . . . in an area within its expertise is itself entitled to at least traditional deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), due, in part, to the agency's specialized experience in matters relating to Indian gaming.").

Here, Defendants obtained information through Plaintiff's arrest and detention process, including an interview in which Plaintiff first lied about and later admitted to his illegal activity. The information before the Border Patrol agents was that: 1) Plaintiff was encountered in the middle of the night in a parked car on the side of the road, about a mile from the border; 2) in the company of a known smuggler; 3) in close proximity to four undocumented immigrants who were intercepted with another smuggler with ties to Plaintiff's companion, and; 4) in the course of questioning Plaintiff, including under oath, he lied repeatedly about his knowledge and involvement in the situation. *See* Exhibits E and F. Defendants reasonably relied on these facts to find that Plaintiff was involved in a human smuggling operation, and led to the discretionary determination to issue an NTA, which simultaneously terminated Plaintiff's DACA and EAD. The Notice of Action that Plaintiff received following the NTA was drawn directly from Appendix I of the DACA SOP. *See* Dkt. No. 16-24.

Defendants exercised their discretion to decline to prosecute the criminal charges and instead initiated removal proceedings against Plaintiff by issuing an NTA. *See* Exhibit D at 4 ("Prosecution for [8 U.S.C. § 1324] Alien Smuggling was declined for ARREOLA."); *id.* ("Assistant Chief Border Patrol Agent R[.Y.] approved removal proceedings for ARREOLA in the furtherance of the United States Government

interest."). This process is consistent with the Napolitano Memorandum and consistent agency practice, and as prescribed in Chapter 14 and Appendix I of the DACA SOP, the issuance of the NTA immediately terminated Plaintiff's DACA, with no additional notice or opportunity to respond required. Per the SOP, the NTA also terminated Plaintiff's employment authorization. Thus, Plaintiff has no basis to allege a violation of internal operating procedures.

The Court should deny Plaintiff's requested relief because there is no basis to conclude that Defendants failed to provide required notice to a DACA recipient before issuing an NTA or to provide an opportunity to challenge the reasons for the NTA issuance.

### iii. Plaintiff Cannot Overcome the Significant Facts Supporting the Decision to Issue an NTA and Terminate his DACA and EAD.

Were the Court to find jurisdiction to hear Plaintiff's claim, and further find a procedural interest in Plaintiff's DACA and employment authorization, the Court should still deny the motion because Plaintiff has failed to demonstrate any likelihood of success on the merits of his claim. *See Earth Island Inst.,* 626 F.3d at 469 ("the party seeking such relief bears the burden of establishing the prerequisites to this extraordinary remedy.").

Plaintiff argues that notice and an opportunity to respond to the termination of his DACA would "allow him to demonstrate that CBP's suspicions were mistaken, as the government's own immigration judge concluded, and that he has not engaged in any disqualifying criminal activity (or even been charged with any crime) and remains eligible for DACA."[17] Dkt. No. 16-2 at 25. However, Plaintiff has provided no evidence

---

[17] Plaintiff repeatedly mischaracterizes the immigration judge's determination that the Border Patrol report lacked enough detail to conclude specifically that Plaintiff "admitted to smuggling aliens for financial gains" for the purpose of denying bond. *See* Dkt. No. 16-2 at 59. Here, Plaintiff asserts instead that the immigration judge "rejected the government's allegation and concluded that CBP had been mistaken." *Id.* at 6, 25; *see also id.* at 19 (the immigration judge "rejected the government's allegations that Mr. Arreola

or argument beyond: 1) the assertion that an immigration judge granted him bonded release from immigration detention; and 2) that he was not criminally prosecuted for his involvement in transporting smuggled aliens. *Id*. Neither of Plaintiff's assertions satisfy his burden to demonstrate a likelihood of prevailing on the merits of his claim.

First, the transcript of the bond hearing shows Plaintiff misrepresented to the immigration judge a number of key facts regarding his interviews with the Border Patrol agents on the night of his arrest. Plaintiff told the immigration judge that he was forthcoming with the Border Patrol agents and admitted he was offered $600 to transport the passenger from Sunny Valley to El Cajon to pick up additional passengers. Dkt. No. 16-10 at 17. Plaintiff did not inform the judge that he lied at the initial encounter, claiming he was offered $100, or that he lied repeatedly under oath in his interview with CBP, claiming he was paid only $40. *See* Exhibits B; E at 11, 18-19. Plaintiff also informed the judge he had picked up the passenger in Sun Valley, California, and drove the passenger the three and one half hours to the destination, Dkt. No. 16-10 at 18, but did not inform the judge that he lied to Border Patrol agents under oath, telling them he only recently picked the passenger up nearby. *See* Exhibits B; E at 10-13, 20, 28. Plaintiff told the judge he was not aware the people he was asked to pick up were undocumented, *id*. at 17, which the judge relied on to question the veracity of CBP's conclusion that Plaintiff was involved in smuggling. *Id*. at 59. In fact, Plaintiff stated under oath he was aware the people were undocumented. Exhibits B; E at 29-30.

Thus, there are a number of critical inconsistencies in Plaintiff's testimony to the immigration judge, and the judge did not review the contradictory evidence in the video of Plaintiff's sworn statement. The transcript of that interview shows Plaintiff was not credible in his encounter with CBP and is not credible in the story he now alleges. The immigration judge's limited finding that it was not clear that CBP did not "make a leap"

---

had committed any criminal conduct."); *id*. at 25 (the immigration judge "concluded . . . that he has not engaged in any disqualifying criminal activity"); *id*. at 27 (the immigration judge found "the CBP's allegations against him were unfounded").

in finding Plaintiff knew he was being paid to pick up undocumented immigrants is based on insufficient and inaccurate information, and thus inadequate to show Plaintiff is likely to prevail on the merits of his claim.

Plaintiff's second claim, that he has not been criminally prosecuted, is irrelevant here. CBP is well within its authority to issue an NTA, which automatically terminates DACA, based on the substantial circumstantial evidence demonstrating Plaintiff's complicity in criminal activity, outlined herein, along with his videotaped admission to knowingly participating in the criminal activity in exchange for money, and Plaintiff's repeated dishonesty about the matter while under oath.[18] As Plaintiff points out, "[t]he [DACA] approval notice informed Mr. Arreola that his deferred action could be terminated if he engaged in "[s]ubsequent criminal activity." Dkt. No. 16-2 at 11. Termination of DACA does not require an indictment or a conviction, and thus the absence of such does not establish a likelihood of Plaintiff's success on the merits here.

### iv. Plaintiff cannot Show Prejudice from the Termination of his DACA and EAD, such that any Additional Process would have Achieved a Different Outcome.

Even if the Court found merit in Plaintiff's claim and determined he was entitled to greater process, Plaintiff would still have to show prejudice, "which means that the outcome of the proceedings *may have been affected* by the alleged violation." *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005) (internal quotation omitted) (emphasis in original). The Ninth Circuit has held that "[w]hen it is necessary to demonstrate

---

[18] Determinations whether to charge an alien with particular grounds of removability in an NTA are subject to prosecutorial discretion. *See, e.g., Matter of Bahta*, 22 I. & N. Dec. 1381, 1391-92 (BIA 2000). Similarly, and also responsive to Plaintiff's claims here, determinations not to pursue criminal prosecution are also a matter of prosecutorial discretion for a variety of reasons. *See Wayte v. United States*, 470 U.S. at 607-608 ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."). Accordingly, that Plaintiff has not been criminally charged for his conduct and such conduct was not asserted as ground of removability here is of no consequence.

prejudice as a result of a constitutional violation, the alien must show that the inadequate procedures occurred in a manner so as *potentially* to affect the outcome of the proceedings." *Walters v. Reno*, 145 F.3d 1032, 1044 (9th Cir. 1998) (emphasis added) (citations omitted). Thus, "there must be *plausible scenarios* in which the outcome of the proceedings would have been different, absent the constitutional violation." *Id.* (emphasis added). A similar harmless error standard would apply to finding of a procedural violation under the APA. *Lyon v. U.S. Immigration & Customs Enf't*, 171 F. Supp. 3d 961, 981–82 (N.D. Cal. 2016) (The APA instructs reviewing courts to take "due account . . . of the rule of prejudicial error.") (citing 5 U.S.C. § 706).

Where a procedural error occurs, the doctrine of "harmless error" requires a determination that the error "had no bearing on the procedure used or the substance of [the] decision reached." *Cal. Wilderness Coal. v. U.S. Dept. of Energy,* 631 F.3d 1072, 1092 (9th Cir. 2011); *see also Lyon*, 171 F. Supp. 3d at 981–82 (where an agency error "did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.") (citing *PDK Laboratories Inc. v. U.S. D.E.A.,* 362 F.3d 786, 799 (D.C. Cir. 2004)); *see also Kazarian v. U.S. Citizenship and Immigration Servs.,* 596 F.3d 1115, 1122 (9th Cir. 2010) (harmless error where agency denied a visa application based on an erroneous interpretation of its regulations, where under proper interpretation it still would have been denied).

Plaintiff claims, with no support, that providing him "a reasoned explanation for the government's actions and an opportunity to present arguments and evidence . . . will allow him to demonstrate that CBP's suspicions were mistaken . . . and that he has not engaged in any disqualifying criminal activity (or even been charged with any crime) and remains eligible for DACA." Dkt. No. 16-2 at 25. However, as described herein, Defendants relied on significant evidence, including multiple inconsistent statements from Plaintiff, in deciding to issue an NTA and therefore terminate his DACA. Where Plaintiff has offered nothing more than an immigration judge's favorable bond

determination based on a limited understanding of the facts, Plaintiff fails to establish any likelihood Defendants would come to a different conclusion regarding the issuance of the NTA (and resulting termination of DACA), were the Court to order such a re-adjudication of his claim.

Where Plaintiff cannot show how additional process would alter the decision to issue an NTA (and therefore terminate DACA), the Court should deny his motion.

## B. The Remaining Preliminary Injunction Factors Favor Defendants.

Where the Government is the opposing party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants have strong interests in enforcing U.S. immigration laws effectively and consistent with the statutory removal scheme. *See AADC*, 525 U.S. at 490 ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and "permit[s] and prolong[s] a continuing violation of United States law."). These interests outweigh the harms alleged by Plaintiff, especially considering the amount of time that has passed since Defendants first terminated Plaintiff's DACA through the initiation of removal proceedings. Moreover, Plaintiff's effort to reinterpret DHS's consistent position regarding NTA issuance and DACA termination would create absurd results wherein DHS' regulations regarding the termination of employment authorization upon the initiation of removal proceedings would be ignored and individuals could use the fact of their continued DACA, while responding to a notice of intent to terminate, to frustrate ICE's removal efforts.

Finally, Plaintiff utilized his DACA and EAD to engage in the criminal activity that led Defendants to initiate his removal. The public interest in this case weighs heavily against allowing Plaintiff to maintain a government grace that he may again abuse for the purpose of breaking the law. For these additional reasons, Plaintiff's motion should be denied.

**CONCLUSION**

Where Plaintiff cannot meet the lesser burden of establishing a likelihood of success on the merits of his claim to be granted a temporary injunction, he surely cannot meet the higher standard necessary to obtain a permanent reversal of Defendants' termination of his DACA through issuance of an NTA. For this reason and the reasons outlined herein, the Court should deny Plaintiff's motion and dismiss his claims.

Dated: October 30, 2017          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
District Court Section
Office of Immigration Litigation

/s/ Jeffrey S. Robins
JEFFREY S. ROBINS
Assistant Director
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-1246
jeffrey.robins@usdoj.gov

JAMES WALKER
Trial Attorney

*Attorneys for Defendants*