1  Jennifer Chang Newell (SBN 233033)
   jnewell@aclu.org
2  Katrina L. Eiland (SBN 275701)
   keiland@aclu.org
3  ACLU FOUNDATION
   IMMIGRANTS' RIGHTS PROJECT
4  39 Drumm Street
   San Francisco, CA 94111
5  Telephone: (415) 343-0770
   Facsimile: (415) 395-0950
6
   Michael K. T. Tan*
7  mtan@aclu.org
   David Hausman*
8  dhausman@aclu.org
   ACLU FOUNDATION
9  IMMIGRANTS' RIGHTS PROJECT
   125 Broad Street, 18th Floor
10 New York, NY 10004
   Telephone: (212) 549-2660
11 Facsimile: (212) 549-2654

12 *Attorneys for Plaintiffs* (Additional counsel listed on following page)

13          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
14
15 INLAND EMPIRE – IMMIGRANT          ) Case No. 5:17-cv-2048-MWF-SHK
   YOUTH COLLECTIVE and JESUS         )
   ALONSO ARREOLA ROBLES on behalf    )
16 of himself and others similarly situated, )
                                      )
17          Plaintiffs,               )
                                      )
18          v.                        )  **PLAINTIFF'S REPLY IN**
                                      )  **SUPPORT OF PLAINTIFF**
                                      )  **JESUS ALONSO ARREOLA**
19 ELAINE C. DUKE, Acting Secretary, U.S. ) **ROBLES'S MOTION FOR A**
   Department of Homeland Security; JAMES ) **PRELIMINARY INJUNCTION**
20 McCAMENT, Acting Director, U.S.    )
   Citizenship and Immigration Services; )
21 MARK J. HAZUDA, Director, Nebraska )
   Service Center, U.S. Citizenship and )  **Judge:** Hon. Michael W. Fitzgerald
22 Immigration Services; SUSAN M.     )  **Courtroom:** 5A
   CURDA, Los Angeles District Director, )  **Hearing:** November 20, 2017
23 U.S. Citizenship and Immigration Services; ) **Time:** 10 a.m.
   THOMAS D. HOMAN, Acting Director,  )
24 U.S. Immigration and Customs       )
   Enforcement; DAVID MARIN, Los      )
25 Angeles Field Office Director, U.S. )
   Immigration and Customs Enforcement; )
26 KEVIN K. McALEENAN, Acting         )
   Commissioner, U.S. Customs and Border )
27 Protection,                        )
            Defendants.               )
28

Ahilan T. Arulanantham (SBN 237841)
aarulanantham@aclusocal.org
Michael Kaufman (SBN 254575)
mkaufman@aclusocal.org
Dae Keun Kwon (SBN 313155)
akwon@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA  90017
Telephone: (213) 977-5232
Facsimile: (213) 977-5297

*Attorneys for Plaintiffs*

*admitted *pro hac vice*

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ...............................................................................................................2

   I.  NO STATUTE PRECLUDES JUDICIAL REVIEW. ...................................2

     A. Section 1252(g) Does Not Bar Mr. Arreola's Claims. ...............................2

     B. Sections 1252(b)(9) and 1252(a)(5) Do Not Bar Mr. Arreola's Claims. ...6

     C. The Termination of Mr. Arreola's DACA Is Reviewable Under
       the APA…………………………………………………………………..8

   II. THE GOVERNMENT DOES NOT CONTEST THAT USCIS'
      TERMINATION DECISION WAS ARBITRARY AND CAPRICIOUS
      UNDER THE APA...............................................................................11

     A. This Court Must Evaluate the Government's Actions Based on Its
       Contemporaneous Rationale. ...................................................................11

     B. USCIS' Automatic Termination of Mr. Arreola's DACA Based on the
       Issuance of an NTA Was Arbitrary and Capricious in Violation of the
       APA…………………………………………………………………..13

     C. USCIS' Automatic Revocation Also Violates Its Own Procedures and
       Thus the APA. ...................................................................................15

   III. THE GOVERNMENT PROVIDES NO RESPONSE TO MR. ARREOLA'S
      DUE PROCESS ARGUMENT THAT, ALTHOUGH DACA IS
      DISCRETIONARY, ONCE GRANTED HE IS ENTITLED TO A FAIR
      PROCESS FOR REVOCATION. ...............................................................19

   IV. THE REMAINING INJUNCTION FACTORS FAVOR
      MR. ARREOLA. ...................................................................................21

CONCLUSION...........................................................................................................23

i

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. ICE,*
    510 F.3d 1 (1st Cir. 2007) ...................................................................... 7

*Alcaraz v. INS,*
    384 F.3d 1150 (9th Cir. 2004) ................................................... 3, 4, 9, 10

*Alfaro-Orellana v. Ilchert,*
    720 F.Supp. 792 (N.D. Cal. 1989) ....................................................... 16

*Arc of California v. Douglas,*
    757 F.3d 975 (9th Cir. 2014) ............................................................... 22

*Arizona Dream Act Coalition v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014) ............................................................. 21

*Arrington v. Daniels,*
    516 F.3d 1106 (9th Cir. 2008) ............................................................. 12

*ASSE Intern., Inc. v. Kerry,*
    803 F.3d 1059 (9th Cir. 2015) ............................................................... 9

*Auntie Anne's, Inc. v. Wang,*
    No. 14-cv-01049, 2014 WL 11728722 (C.D. Cal. July 16, 2014) ........... 22

*Bell v. Burson,*
    402 U.S. 535 (1971) ........................................................................... 19

*Bowen v. Mich. Academy of Family Physicians,*
    476 U.S. 667 (1986) ............................................................................. 2

*Califano v. Sanders,*
    430 U.S. 99 (1977) ............................................................................. 12

*Camp v. Pitts,*
    411 U.S. 138 (1973) ...................................................................... 12, 13

*Catholic Soc. Servs., Inc. v. I.N.S.,*
    232 F.3d 1139 (9th Cir. 2000) ............................................................... 4

*Ching v. Mayorkas,*
    725 F.3d 1149 (9th Cir. 2013) ..................................................... 8, 19, 20

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971) ........................................................................... 12

*Colotl v. Kelly,*
    No. 17-cv-1670, 2017 WL 2889681 (N.D. Ga. June 12, 2017) ...... 2, 10, 15, 21

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,*
    450 F.3d 930 (9th Cir. 2006) ............................................................... 12

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.,*
    448 F.3d 1118 (9th Cir. 2006) ............................................................. 22

*FCC v. Fox Television Stations, Inc.,*

ii

556 U.S. 502 (2009) ..........................................................................14, 15
*Gomez-Lopez v. Ashcroft*,
    393 F.3d 882 (9th Cir. 2005)...................................................................5
*Gonzalez Torres v. DHS*,
    No. 17-cv-1840, 2017 WL 4340385, (S.D. Cal. Sept. 29, 2017)......................passim
*Heckler v. Chaney*,
    470 U.S. 821 (1985)...............................................................9, 10, 11
*Indep. Min. Co. v. Babbitt*,
    105 F.3d 502 (9th Cir. 1997)..................................................................12
*INS v. St. Cyr*,
    533 U.S. 289 (2001) ..............................................................................6
*JEFM. v. Sessions*,
    No. 15-35738 (9th Cir. Dec. 5, 2016) ....................................................8
*JEFM v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016)...........................................................7, 8
*Judulang v. Holder*,
    565 U.S. 42 (2011) ...............................................................................14
*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987)...............................................................10
*Madu v. Attorney General*,
    470 F.3d 1362 (11th Cir. 2006)...............................................................5
*Mamigonian v. Biggs*,
    710 F.3d 936 (9th Cir. 2013)...................................................................7
*Martinez v. Napolitano*,
    704 F.3d 620 (9th Cir. 2012)...................................................................8
*Matter of Quintero*,
    18 I. & N. Dec. 348 (BIA 1982)......................................................5, 7, 8
*Mendez-Gutierrez v. Ashcroft*,
    340 F.3d 865 (9th Cir. 2003)...................................................................9
*Morales de Soto v. Lynch*,
    824 F.3d 822 (9th Cir. 2016).................................................................10
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...........................................................................13, 14
*Nicholas v. INS*,
    590 F.2d 802 (9th Cir.1979)...................................................................6
*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
    795 F.3d 956 (9th Cir. 2015).................................................................14
*Pinnacle Armor, Inc. v. U.S.*,
    648 F.3d 708 (9th Cir. 2011)...................................................................9
*Quach v. Bank of Am., Nat. Ass'n*,
    No. 12–5037 EJD, 2012 WL 4498873 (N.D. Cal. Sept. 28, 2012)..........................21
*Reno v. American-Arab Anti-Discrimination Committee*,

iii

525 U.S. 471 (1999) ..................................................................................3, 5
*Resident Councils of Washington v. Leavitt*,
   500 F.3d 1025 (9th Cir. 2007)....................................................................18
*Rodriguez v. Sessions*,
   677 Fed. App'x 447 (9th Cir. 2017) ..............................................................5
*Romeiro de Silva v. Smith*,
   773 F.2d 1021 (9th Cir. 1985) .......................................................................6
*San Diego Minutemen v. California Bus. Transp. & Hous. Agency's Dep't of Transp.*,
   570 F. Supp. 2d 1229 (S.D. Cal. 2008) ....................................................23
*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ......................................................................................12
*Shirrod v. Director*,
   809 F.3d 1082 (9th Cir. 2015) .....................................................................12
*Singh v. Gonzales*,
   499 F.3d 969 (9th Cir. 2007) .....................................................................6, 7
*Sissoko v. Rocha*,
   509 F.3d 947 (9th Cir. 2007) .........................................................................6
*Spencer Enters., Inc. v. United States*,
   345 F.3d 683 (9th Cir. 2003) .........................................................................9
*Steenholdt v. FAA*,
   314 F.3d 633 (D.C. Cir. 2003) .....................................................................9
*Texas v. United States*,
   787 F.3d 733 (5th Cir. 2015) .........................................................................5
*Texas v. United States*,
   809 F.3d 134, 170 (5th Cir. 2015), *as revised* (Nov. 25, 2015),
   *cert. granted*, 136 S. Ct. 906, 193 L. Ed. 2d 788 (2016) ........................11
*Toor v. Lynch*,
   789 F.3d 1055 (9th Cir. 2015) .....................................................................12
*U.S. ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954) ....................................................................................10
*United States v. Barajas-Montiel*,
   185 F.3d 947 (9th Cir. 1999) .......................................................................13
*United States v. Hovsepian*,
   359 F.3d 1144 (9th Cir. 2004) ....................................................................4, 5
*Vilchiz-Soto v. Holder*,
   688 F.3d 642 (9th Cir. 2012).........................................................................5
*Zolotukhin v. Gonzales*,
   417 F.3d 1073 (9th Cir. 2005).....................................................................20

**Statutes**

5 U.S.C. § 701(a) .........................................................................................10

iv

5 U.S.C. § 701(a)(2) ................................................................. 9, 10

5 U.S.C. § 706(2) ......................................................................... 14

8 U.S.C. § 1252(a)(1) ..................................................................... 6

8 U.S.C. § 1252(a)(2)(B) ............................................................... 5

8 U.S.C. § 1252(a)(5) ................................................................. 2, 6

8 U.S.C. § 1252(b)(9) ....................................................... 2, 6, 7, 8

8 U.S.C. § 1252(g) .............................................................. passim

**Regulations**

8 C.F.R. § 274a.12(c) ................................................................... 16

8 C.F.R. § 274a.14(a)(1)(ii) ......................................................... 16

# INTRODUCTION

The government wholly fails to address the merits of Mr. Arreola's claim that stripping him of DACA ("Deferred Action for Childhood Arrivals") based solely on a Notice to Appear ("NTA") charging him with presence without admission was arbitrary, capricious, and contrary to law.  Indeed, the government fails even to contest that the DACA rules explicitly provide that a noncitizen's placement in removal proceedings does not preclude a DACA grant.  Instead, the government improperly offers a *post hac* rationale—one that the United States Citizenship and Immigration Services ("USCIS") did not provide to Mr. Arreola and which there is no indication that it even considered in deciding to terminate his DACA.  And in arguing that USCIS' automatic termination did not also violate its own rules, the government ignores the plain language of the DACA Standard Operating Procedures.

Given the government's clear violation of the Administrative Procedure Act ("APA"), it is no surprise that it asks this Court to avoid the merits on jurisdictional and other grounds.  In doing so, it repeatedly mischaracterizes Mr. Arreola's claims as challenges to removal.  Yet Mr. Arreola does not challenge his placement in removal proceedings, which are ongoing; instead, he challenges USCIS's separate decision to terminate his DACA after removal proceedings were initiated—a claim the immigration court would have no jurisdiction to consider.  The government also incorrectly portrays Mr. Arreola's claims as directed at the agency's ultimate exercise of discretion, rather than at the agency's termination practices, set out in its nondiscretionary eligibility criteria and procedures, which provide a meaningful standard for review under the APA.  Unsurprisingly, each federal court to address the government's jurisdictional arguments concerning a DACA recipient's challenge to termination has rejected them, and this Court should as well.

Mr. Arreola's request for relief is straightforward: this Court should preserve the status quo by temporarily enjoining the revocation of Mr. Arreola's DACA pending a termination process that complies with the APA and due process.

**ARGUMENT**

## I.   NO STATUTE PRECLUDES JUDICIAL REVIEW.

In determining whether a suit can be brought under the APA, courts must "begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667, 670 (1986). This presumption requires that "only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review [of administrative action]." *Id.* at 671 (citation and internal quotation marks omitted).  Here, there is no clear showing of intent to preclude Mr. Arreola's challenge to the termination of his DACA, a matter entirely independent of and collateral to any removal proceedings.

The government contends that 8 U.S.C. § 1252(g), as well as §§ 1252(b)(9) and 1252(a)(5)—each of which purports to limit jurisdiction over certain challenges relating to removal proceedings—bar this court from exercising jurisdiction over a challenge to the termination of DACA. Yet each court to have considered these contentions has rejected them. *Gonzalez Torres v. DHS*, No. 17-cv-1840, 2017 WL 4340385, at *4-5 (S.D. Cal. Sept. 29, 2017) ("Here, Plaintiff brings a procedural challenge to termination of his DACA [], an issue independent from any removal proceedings."); *Colotl v. Kelly*, No. 17-cv-1670, 2017 WL 2889681, at *8-10 (N.D. Ga. June 12, 2017) ("[N]either [§ 1252(g) nor § 1252(b)(9)] divests this Court of jurisdiction to hear Plaintiff's challenge to the . . . *nondiscretionary* process by which her DACA status was terminated.").  As these courts correctly concluded, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not bar review of claims that the government invalidly terminated a noncitizen's DACA.  None of Mr. Arreola's claims challenges the validity of any removal order, the adequacy of any removal proceedings, or the initiation of any such proceedings.

### A. Section 1252(g) Does Not Bar Mr. Arreola's Claims.

Section 1252(g) does not apply because, despite the government's repeated

efforts to mischaracterize the nature of his claims, Mr. Arreola is not challenging any decision to "commence" or "adjudicate" removal proceedings.  As the Supreme Court explained in *Reno v. American-Arab Anti-Discrimination Committee*, ("*AADC*"), "what § 1252(g) says is" quite "narrow[]."  525 U.S. 471, 482 (1999).  *Compare* Opp. at 16 (asserting, contrary to *AADC*, that § 1252(g) "broadly precludes judicial review").  "The provision applies *only* to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *AADC*, 525 U.S. at 482.  Section 1252(g) does *not* preclude review of "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order."  *Id.*

Consistent with the Supreme Court's guidance in *AADC*, the Ninth Circuit has narrowly construed § 1252(g).  For example, in *Alcaraz v. INS*, 384 F.3d 1150 (9th Cir. 2004), the Ninth Circuit made clear that even claims closely related to the initiation of removal proceedings are not precluded by § 1252(g), so long as the claim does not directly challenge the decision to commence proceedings itself.  *Id.* at 1160-61.  *Alcaraz* considered whether § 1252(g) precluded jurisdiction over a claim that the BIA should have administratively closed the noncitizens' removal proceedings, which would have allowed the immigration authorities to re-initiate removal proceedings in which the noncitizens would be eligible to apply for a form of discretionary relief that would not have otherwise been available to them.  *Id.* at 1152-53.  This process—of administrative closure followed by re-initiation of removal proceedings—was known as "repapering."  *Id.* at 1154.  The Ninth Circuit held that "[w]hile the second step in the repapering process involves a decision to commence (or "reinitiate") proceedings, . . . [t]he Alcarazes' repapering claim only raises the issue of administrative closure. Therefore, we are not barred from hearing this claim by 8 U.S.C. § 1252(g)."  *Id.* at

3

1161.

Here, although one of Mr. Arreola's claims challenges USCIS' categorical revocation of his DACA after his NTA was issued, Mr. Arreola's claim does not challenge CBP's issuance of the NTA itself or its decision to place him in removal proceedings.  Rather, he challenges USCIS' separate and independent decision to revoke his DACA on that basis.  *See Gonzalez Torres*, 2017 WL 4340385, at *4-5 (holding that § 1252(g) did not preclude jurisdiction over noncitizen's challenge to DACA termination based on an NTA, and explaining that the plaintiff's challenge was "independent from any removal proceedings").  As in *Alcaraz* and *Gonzalez Torres*, § 1252(g) does not preclude jurisdiction here because Mr. Arreola's specific claim does not challenge the commencement of removal proceedings itself.  *See, e.g.*, *Catholic Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1150 (9th Cir. 2000) (explaining that § 1252(g) "applies only to the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings").  Notably, success on the claims in this case would not affect the immigration judge's continued jurisdiction over Mr. Arreola's removal proceedings.

Mr. Arreola's claim is not barred by § 1252(g) for the additional reason that he does not challenge the agency's ultimate exercise of discretion, but rather asserts legal claims: he challenges Defendants' failures to comply with their own rules, to provide him with the process due, and to comply with the mandates of the APA.  In construing § 1252(g), the Ninth Circuit has also held that while it precludes jurisdiction to review challenges to the three specified *discretionary* decisions, it does *not* bar review of legal questions, even if related to those discretionary decisions.  In *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc), the Court explained that under 8 U.S.C. § 1252(g), "[t]he district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority."

*Accord, e.g.*, *Madu v. Attorney General*, 470 F.3d 1362, 1368 (11th Cir. 2006) (explaining that § 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions"). The Ninth Circuit's en banc decision in *Hovsepian* is controlling here.[1] Thus, although *AADC* indicated that § 1252(g) was "designed to give some measure of protection to 'no deferred action' decisions and similar *discretionary* determinations," 525 U.S. at 485 (emphasis added), Mr. Arreola's case does not challenge any discretionary decision not to defer action. *See also Texas v. United States*, 787 F.3d 733, 755-56 (5th Cir. 2015) (holding that § 1252(g) was inapplicable to states' APA challenge to 2014 deferred action program). Indeed, rather than exercise its discretion in determining whether the totality of circumstances warranted revocation, the government categorically terminated Mr. Arreola's DACA and work permit.[2]

Finally, the government incorrectly represents that the Ninth Circuit has "held there is no subject matter jurisdiction to review a decision to grant DACA" pursuant to § 1252(g). Opp. at 15. However, neither case cited by the government so holds. In *Vilchiz-Soto v. Holder*, 688 F.3d 642 (9th Cir. 2012), the noncitizen sought review not of any decision to grant or deny DACA, but of the Board of Immigration Appeals' ("BIA") decision not to reopen removal proceedings, which the noncitizen believed would have allowed him to apply for DACA. *Id.* at 643-44. The BIA, however, has no jurisdiction to grant or deny DACA. *See Matter of Quintero*, 18 I. & N. Dec. 348, 350 (BIA 1982). The government also cites dicta in an unpublished case, *Cruz*

---

[1] Notably, the government overlooks the Ninth Circuit's en banc decision in *Hovsepian* and instead cites an Eighth Circuit case, incorrectly representing that "8 U.S.C. § 1252(g) does not distinguish between discretionary and nondiscretionary duties." Opp. at 17. As discussed, however, the Ninth Circuit has rejected the argument advanced by the government.

[2] *Cf. Gomez-Lopez v. Ashcroft*, 393 F.3d 882, 884 (9th Cir. 2005) (holding that denial of discretionary relief based on a conclusion that noncitizen was in a "per se exclusion categor[y]" for that form of relief was "not a discretionary decision and therefore [did] not strip this court of jurisdiction" under § 1252(a)(2)(B)).

*Rodriguez v. Sessions*, 677 Fed. App'x 447 (9th Cir. 2017), but that case is likewise inapposite because the noncitizen challenged the BIA's denial of a motion to remand, and the Court therefore had no occasion to consider whether it would have jurisdiction to review a challenge to a denial of DACA on legal grounds.[3]  In both cases cited by the government, the noncitizen had not even applied for DACA, let alone sought review of any denial.[4]

### B. Sections 1252(b)(9) and 1252(a)(5) Do Not Bar Mr. Arreola's Claims.

As the Supreme Court has explained, the purpose of § 1252(b)(9) is "to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals, but it applies only '[w]ith respect to review of an order of removal under subsection [1252] (a)(1).'" *INS v. St. Cyr*, 533 U.S. 289, 313 (2001). Critically, *St. Cyr* held that § 1252(b)(9) *does not* apply to matters that are "*not* subject to judicial review under § 1252(a)(1)"—which governs judicial review of removal orders.  *Id.*  The same is true of § 1252(a)(5), which expressly concerns "judicial review of an order of removal." *See Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) ("By virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal."). Thus, §§ 1252(a)(5) and 1252(b)(9) work to ensure that issues that can be adjudicated in a deportation proceeding are resolved there, rather than in piecemeal, separate litigation.

Here, these provisions are inapplicable because Mr. Arreola does not seek

---

[3]     The government also cites *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1024-25 (9th Cir. 1985), but that case did not involve section 1252(g); in fact, the statute did not yet exist at the time. In any event, the court explained that *Nicholas v. INS*, 590 F.2d 802 (9th Cir.1979), which found that courts had jurisdiction to review the 1978 deferred action Operations Instruction, remained good law in the Ninth Circuit.

[4]     The government's citation to *Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007), is likewise unavailing.  That case involved a "direct[] challenge[]" to the government's "decision to commence expedited removal proceedings." *Id.* at 950.   In contrast, here, Mr. Arreola does not challenge the validity of his placement in removal proceedings whatsoever.

judicial review of an order of removal.  To the contrary, his challenge is collateral to, and independent of, any removal proceedings.  *See Gonzalez Torres*, 2017 WL 4340385, at \*4-5.  Indeed, the government takes the position that "[d]eferred action does not . . . provide any defense to removal," and "[a]n individual with deferred action remains removable at any time."  Opp. at 3.  A noncitizen who is in removal proceedings can apply for DACA separately and simultaneously.[5]  Critically, an IJ has no power to grant or deny deferred action, or to review or reverse the immigration agency's decision to revoke deferred action.  *Gonzalez Torres*, 2017 WL 4340385, at \*11 ("[A]n immigration judge has no jurisdiction to reinstate DACA status, or authorize an application for renewal of DACA status, as acknowledged by Defendants at oral argument."); *see also* Napolitano Memo at 2-3; *Matter of Quintero*, 18 I. & N. Dec. at 350 (explaining that "neither the immigration judge nor the Board may grant [deferred action] status or review a decision of the District Director to deny it").

In particular, § 1252(b)(9) does not preclude Mr. Arreola's claim because that section does not deprive district courts of jurisdiction where the claim could not have been litigated in removal proceedings and the noncitizen would otherwise "have had no legal avenue to obtain judicial review of this claim."  *JEFM v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (citing *Singh*, 499 F.3d at 979-80); *see also Aguilar v. ICE*, 510 F.3d 1, 11-12 (1st Cir. 2007) (explaining that § 1252(b)(9) does not preclude "claims that cannot effectively be handled through the available administrative process").  The government concedes this point, but ignores that the immigration court simply has no jurisdiction to review the termination or denial of DACA.  *See* Opp. at 19 ("Congress's intent was simple: if the issue is one that can be raised in removal proceedings, and ultimately in a petition for review, then the statute precludes district court review") (citing *JEFM*, 837 F.3d at 1034).

---

[5]     Doc. No. 16-4, Kwon Decl. ¶ 10, Ex. 9 at 2 (Janet Napolitano, Memorandum on Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children ("Napolitano Memo") (June 15, 2012)).

The government also overlooks that in applying the jurisdictional provisions of § 1252, the Ninth Circuit has repeatedly held that APA challenges to the Department of Homeland Security's ("DHS") denials of affirmative benefits that are collateral to a noncitizen's removal proceedings may be brought in district court.  For example, in *Mamigonian v. Biggs*, 710 F.3d 936, 945-46 (9th Cir. 2013), the Ninth Circuit considered whether a noncitizen could seek district court review of USCIS' denial of an adjustment of status application, when the noncitizen had also been in removal proceedings.  Because review in the context of removal proceedings "would be unavailable to Ms. Mamigonian," she could bring an affirmative claim in district court notwithstanding the § 1252 jurisdictional bars.  *Id.* at 945; *see also, e.g.*, *Ching v. Mayorkas*, 725 F.3d 1149, 1154-59 (9th Cir. 2013) (reversing district court's denial of procedural due process challenge to the denial of an I-130 petition for immediate relative status filed by a husband for his wife, even though the wife's "removal proceedings are currently pending").

The government unsuccessfully attempts to draw support for its § 1252(b)(9) argument from *JEFM*, but that case supports Mr. Arreola's position.[6]  As noted, *JEFM* makes clear that where, as here, the immigration court would have no jurisdiction to adjudicate the claim, § 1252(b)(9) does not bar district court jurisdiction.  *JEFM*, 837 F.3d at 1032.  In *JEFM*, the Court reasoned that the plaintiffs' claim—that children in removal proceedings have a right to counsel—was not independent of removal proceedings, emphasizing that "[r]ight-to-counsel claims are routinely raised in petitions for review filed with a federal court of appeals."  *Id.* at 1033.[7]  Here, in contrast, there is no question that a challenge to the revocation of

---

[6]    Counsel submit that *JEFM*'s conclusion—that the right to counsel claims at issue there could not be brought in district court—was incorrect, and note that there is a pending petition for rehearing en banc.  *See JEFM v. Sessions*, No. 15-35738, Doc. No. 106 at 12-23 (9th Cir. Dec. 5, 2016).

[7]    Similarly, in *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012), the petitioner raised asylum and other claims that could be raised in removal proceedings.

deferred action cannot be brought in immigration court, because the immigration judge has no power to consider it.  *Matter of Quintero*, 18 I. & N. Dec. at 350.

### C. The Termination of Mr. Arreola's DACA Is Reviewable Under the APA.

The DACA eligibility criteria and Standard Operating Procedures ("SOPs") provide law to apply, and the government's contention that that determination is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), is therefore incorrect. That bar applies only where there is "no meaningful standard against which to judge the agency's exercise of discretion." *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).  As the Ninth Circuit has held, there *is* law to apply whenever "statutes, regulations, established agency policies, or judicial decisions . . . provide a meaningful standard against which to assess" the agency action.  *Id.*; *accord ASSE Intern., Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) ("Even where statutory language grants an agency 'unfettered discretion,' its decision may nonetheless be reviewed if regulations or agency practice provide a 'meaningful standard by which this court may review its exercise of discretion.'") (quoting *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003)).

The Ninth Circuit has expressly found that informal memoranda may provide such a standard.  For example, in *Alcaraz*, the Ninth Circuit held that, although the relevant statutory provision committed the repapering policy at issue to the Attorney General, the agency's memoranda on the topic were sufficient to provide jurisdiction under the APA.  384 F.3d at 1161; *see also Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 719 (9th Cir. 2011) (looking to agency's interim certification standards for law to apply); *Mendez-Gutierrez*, 340 F.3d at 868-69 (finding that agency's application of reinstatement rules provided law to apply); *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) ("[J]udicially manageable standards by which to judge the agency's action . . . may be found in formal and informal policy statements and regulations as

well as in statutes.") (citation and internal quotation marks omitted).  Here, the Napolitano Memorandum and DACA SOPs govern the DACA eligibility determination and in particular, whether Mr. Arreola continues to be eligible for DACA despite the issuance of his NTA.[8]  These documents, like the repapering memoranda in *Alcaraz*, 384 F.3d at 1161, set out detailed policy directives that provide the standards against which this Court can judge the government's revocation of Mr. Arreola's DACA.  *See Gonzalez Torres*, 2017 WL 4340385, at *5 ("Defendants' failure to follow the termination procedures set forth in the DACA SOP is arbitrary, capricious, and an abuse of discretion.") (citing *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), and *Alcarez*); *Colotl*, 2017 WL 2889681, at *10  ("Defendants' argument that § 701(a) of the APA bars this Court from reviewing an agency's non-discretionary review process fails.").  The government's suggestion that such directives are unenforceable under *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), Opp. at 14, relies on a patent misreading of a single case.  In *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1010-11 (9th Cir. 1987), the plaintiff did not attempt to enforce the guidelines at issue.  Instead, the case concerned whether those guidelines were applicable at all, and improperly promulgated without notice and comment procedures.  The opinion therefore did not mention *Accardi* at all, and indeed the court also explained that it was *not* faced with the question of whether it lacked jurisdiction under 5 U.S.C. 701(a)(2).  *See Mada-Luna*, 813 F.2d at 1015.

---

[8]     Although the DACA memorandum has been withdrawn, the agency continues to adjudicate DACA applications according to the standards set out in the memorandum and its SOPs.  *See* Kwon Decl. ¶ 16, Ex. 15 at 15 (*Press Briefing by Press Secretary Sarah Sanders and Homeland Security Advisor Tom Bossert, 9/8/2017, #11*, The White House, Office of the Press Secretary (explaining that "[d]uring this six-month time, there are no changes that are being made to the program at this point"); *see also id*. ¶ 17, Ex. 16 (Testimony of Michael Dougherty, Assistant Secretary of DHS, Committee of the Judiciary, Oversight of the Administration's Decision to End Deferred Action for Childhood Arrivals (Oct. 3, 2017), https://www.c-span.org/video/?435059-1/trump-administration-officials-testify-decision-rescind-daca (relevant testimony at 56:46)).

The proposition from *Heckler*, 470 U.S. at 831-32, that an agency's nonenforcement decisions are presumptively committed to agency discretion, is consistent with these principles: Mr. Arreola challenges USCIS' determination that his DACA should be automatically terminated based on CBP's issuance of an NTA, not any eventual enforcement decision in removal proceedings.[9]  Indeed, in *Heckler*, the Court noted that even enforcement decisions are reviewable where they are governed by "clearly defined factors" like the DACA eligibility criteria.  470 U.S. at 834 (citation and internal quotation marks omitted).  And the Fifth Circuit expressly found that the DACA memorandum created nondiscretionary eligibility standards.  *See Texas v. United States*, 809 F.3d 134, 170 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *cert. granted*, 136 S. Ct. 906, 193 L. Ed. 2d 788 (2016).

In sum, the government fails to address the simple reason why the decision to terminate Mr. Arreola's DACA on the basis of the issuance of his NTA is reviewable under the APA: the eligibility criteria and the SOPs provide the "meaningful standard against which to judge the agency's exercise of discretion" required by *Heckler*, 470 U.S. at 830.

## II.  THE GOVERNMENT DOES NOT CONTEST THAT USCIS' TERMINATION DECISION WAS ARBITRARY AND CAPRICIOUS UNDER THE APA.

### A. This Court Must Evaluate the Government's Actions Based on Its Contemporaneous Rationale.

The government does not dispute that USCIS terminated Mr. Arreola's DACA automatically based on CBP's issuance of an NTA, and thereby failed to exercise its own discretion.  Nor does the government contend that it ever provided an

---

[9]     *Morales de Soto v. Lynch*, 824 F.3d 822, 828-29 (9th Cir. 2016), the only Ninth Circuit case on which the government relies for the proposition that exercises of prosecutorial discretion are unreviewable, concerned a challenge to an agency's final discretionary determination. Here, by contrast, Mr. Arreola challenges USCIS' failure to follow its own rules before reaching a discretionary determination.

1    explanation, based on relevant factors, for its abrupt reversal.  Instead, the government
2    introduces new documents related to Mr. Arreola's arrest—documents that the
3    government never suggests that USCIS possessed, let alone relied on, in terminating
4    Mr. Arreola's DACA.  The government's contention that this Court should consider
5    that evidence violates two fundamental principles of administrative law.

6         First, it is black letter law that courts review agency action according to the
7    contemporaneous reasons given by the agency, and disregard any alternative
8    rationales presented during litigation.  *See Citizens to Preserve Overton Park, Inc. v.*
9    *Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders*,
10   430 U.S. 99 (1977); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).  As the
11   Ninth Circuit has explained, "[t]he rule barring consideration of *post hoc* agency
12   rationalizations operates where an agency has provided a particular justification for a
13   determination at the time the determination is made, but provides a different
14   justification for that same determination when it is later reviewed by another body."
15   *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997); *accord Toor v. Lynch*,
16   789 F.3d 1055, 1064 (9th Cir. 2015) (agency action may only be affirmed based on
17   the contemporaneous "explanations offered by the agency") (internal quotation marks
18   omitted) (quoting *Arrington v. Daniels*, 516 F.3d 1106, 1112–13 (9th Cir. 2008));
19   *Shirrod v. Director*, 809 F.3d 1082, 1087 n.4 (9th Cir. 2015) (court must "review only
20   what the [agency] did, not what [it] could have done").

21        Here, USCIS made clear in its notice to Mr. Arreola, and Defendants do not
22   contest, Opp. at 25, that USCIS terminated Mr. Arreola's DACA automatically due to
23   CBP's issuance of an NTA based on his presence without admission.  The newly
24   submitted evidence is irrelevant to USCIS' automatic termination decision, which is
25   the only rationale USCIS provided and the only rationale that is at issue in this case.

26        Second, and relatedly, courts may only review agency actions on the basis of
27   the administrative record.  "If [a] finding is not sustainable on the administrative
28   record made, then the [agency's] decision must be vacated and the matter remanded to

[it] for further consideration." *Camp v. Pitts*, 411 U.S. 138, 143 (1973). This Court should decline to consider outside evidence that is not part of the record of USCIS' termination decision; indeed, there is no evidence that USCIS itself considered it. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) (affirming the district court's decision to strike additional exhibits that were not part of the administrative record and noting that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court") (quoting *Camp*, 411 U.S. at 142).[10]

In sum, on this motion, the Court must evaluate USCIS' action according to the contemporaneous rationale it provided and based on the record that was actually before it.

### B. USCIS' Automatic Termination of Mr. Arreola's DACA Based on the Issuance of an NTA Was Arbitrary and Capricious in Violation of the APA.

Defendants wholly fail to respond to—and therefore do not contest—Mr. Arreola's claim that USCIS' actual rationale for terminating his DACA grant—the

---

[10]    Notably, the government's allegations underscore the value of providing a fair pre-termination procedure with notice of the reasons for the decision and a fair opportunity to respond. Had Mr. Arreola been provided an opportunity to respond, he would have vigorously contested that he committed any crime. In fact, the government's extra-record evidence shows that Mr. Arreola emphatically denied smuggling when asked. Doc No. 23-2 at 54. Yet CBP represented in the I-213 form that Mr. Arreola "stated that he was smuggling illegal aliens for financial gain." Kwon Decl. ¶ 8, Ex. 7. An Immigration Judge nonetheless found Mr. Arreola credible that he was not engaged in smuggling, and concluded that the I-213 allegations were mistaken. The government now heavily relies on Mr. Arreola's purported acknowledgment that he knew the passengers he was to pick up were undocumented, Opp. at 28, but Mr. Arreola never suggested in the interview that he knew of his prospective passengers' immigration statuses *before* he was arrested by CBP agents. In any event, the government apparently decided that there was no basis to charge Mr. Arreola with any crime. *Cf. United States v. Barajas-Montiel*, 185 F.3d 947, 953-54 (9th Cir. 1999) (holding that to establish a violation, specific intent to violate the smuggling laws must be established).

13

mere issuance of an NTA charging him with being present without admission—was arbitrary and capricious under the APA. Nor do Defendants contest that the Napolitano Memo and SOPs expressly provide that a noncitizen's placement in removal proceedings does not preclude a DACA grant.

USICS' termination decision (1) represents a complete reversal of its prior considered position that Mr. Arreola was eligible for and warranted DACA without providing "a reasoned analysis for the change," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); and (2) does not reflect reasoned decisionmaking, *see Judulang v. Holder*, 565 U.S. 42, 55 (2011) (holding that "agency action must be based on non-arbitrary, 'relevant factors'"). USCIS' decision is arbitrary and capricious under the APA for both of these reasons. 5 U.S.C. § 706(2).

First, although an agency may depart from its prior decision, if it does so, it "is obligated to supply a reasoned analysis for the change." *State Farm*, 463 U.S. at 42; *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("[T]he agency must show that there are good reasons for the new policy."). USCIS' one-sentence explanation that it terminated Mr. Arreola's DACA automatically fails to acknowledge that Mr. Arreola remains eligible for DACA under the applicable criteria, much less provide "good reasons" for the agency's change in position, as required by the APA. *Fox Television Stations, Inc.*, 556 U.S. at 515; *see also, e.g.*, *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (explaining that the agency is "required to provide a 'reasoned explanation . . . for disregarding' the 'facts and circumstances' that underlay its previous decision") (citations omitted). Indeed, all DACA recipients lack lawful immigration status and, like Mr. Arreola, are removable on that basis. USCIS' reliance on an NTA citing Mr. Arreola's presence without admission therefore fails to explain, much less justify, its decision to reverse course and terminate his DACA. *See Fox Television Stations, Inc.*, 556 U.S. at 515 (explaining that an agency must give a "more detailed justification"

14

for a policy change if its "prior policy has engendered serious reliance interests that must be taken into account").

Second, as explained in Mr. Arreola's opening brief, USCIS failed to act "in a reasoned manner" in violation of the APA. *See* PI Mot. at 11-14. An individual's presence without admission is wholly irrelevant to whether that individual is eligible for DACA, and so the issuance of an NTA charging presence without admission does not provide a reasoned basis for terminating DACA. This conclusion is supported by the DACA SOPs, which make clear that a noncitizen in removal proceedings is eligible for and may be granted DACA like any other applicant. Kwon Decl. ¶ 21, Ex. 20 ("DACA SOPs") at 71, 74-75. Despite Mr. Arreola's continued eligibility for the program, however, USCIS failed to consider the relevant facts and circumstances and exercise its individualized discretion in accordance with its rules. Those make clear that if someone is the subject of an NTA, USCIS should consider all of the relevant circumstances, including the ground for removal charged in the NTA, to determine whether DACA is appropriate or whether the individual is disqualified. *Id.* at 74-75. The DACA rules also make clear that when the ground in the NTA does not adversely impact a DACA grant—for example, merely lacking immigration status—the individual is not disqualified from DACA.

### C. USCIS' Automatic Revocation Also Violates Its Own Procedures and Thus the APA.

USCIS' decision contravenes the APA for an additional reason: it violates the DACA procedures, which the agency is required to follow. *See* PI Mot. at 17. Indeed, notwithstanding the government's passing suggestion that a DACA grant can be terminated at any time, without notice (Opp. at 24), ultimately the government concedes that the SOPs are binding on USCIS when adjudicating DACA cases, as multiple courts have found. *See* Opp. at 25 ("[T]he DACA SOP was written by USCIS for USCIS agents and officers."); *Colotl*, 2017 WL 2889681, at *4 ("The SOP states that . . . the procedures to be followed are not discretionary."); *Gonzalez Torres*,

15

2017 WL 4340385, at *3 ("The DACA SOP issued by DHS sets forth the procedures for adjudicating DACA applications, renewals, and the termination of participation in DACA."); *see also, e.g.*, *Fox Television Stations, Inc.*, 556 U.S. at 549 (an "agency must follow its own rules").  The DACA SOPs provide that, in most circumstances, including those that involve disqualifying criminal convictions, USCIS can only terminate DACA after the agency provides a Notice of Intent to Terminate that explains the adverse grounds and gives the recipient 33 days to respond with arguments and evidence.  DACA SOPs at 136-37; *see also* PI Mot. at 17.

Defendants' assertion that "where CBP or ICE issues a Notice to Appear, the DACA SOP provides that DACA and the EAD terminate automatically," Opp. at 25, finds no support in the SOPs.  Instead, the SOPs make clear that there is only one narrow circumstance in which USCIS may do so, which requires undertaking a specific procedure that Defendants concede did not occur in Mr. Arreola's case.  Under Chapter 14 of the SOPs, if USCIS determines that a disqualifying offense or public safety concern is deemed to be "Egregious Public Safety" or "EPS" under the agency's 2011 NTA Memorandum, the officer should forward the case to a special unit within USCIS, which will then refer the case to ICE and follow the handling procedures outlined in the memo.  DACA SOPs at 137.  If after referral from USCIS, ICE decides to issue an NTA, the SOPs provide that the NTA's issuance terminates DACA.  *Id.*  Defendants have not cited a single authority that provides that USCIS may terminate DACA automatically any time CBP or ICE issues an NTA based solely on presence without admission.  *See* Opp. at 24-27.  Indeed, if it were the case that all DACA grants automatically terminate with the issuance of an NTA, then it would be unnecessary for the SOPs to enumerate detailed procedures for termination when an NTA is issued in certain EPS cases.[11]

---

[11]     The government also asserts that a federal regulation provides for termination of a DACA EAD when an NTA is filed with the immigration court.  Opp. at 25 n.16 (citing 8 C.F.R. § 274a.14(a)(1)(ii)).  Although the cited regulation provides for

1    Here, nothing in the record indicates that USCIS determined that Mr. Arreola
2    presented an EPS concern or referred his case to ICE, or that ICE ever reviewed his
3    case or issued an NTA based on a determination that it was an EPS case; nor does the
4    government even attempt to suggest that USCIS followed the procedures for EPS
5    cases.  On the contrary, CBP (not ICE) issued Mr. Arreola's NTA based solely on
6    presence without admission and without reference to any criminal grounds for
7    removal.  Under those circumstances, the DACA SOPs require that USCIS provide
8    Mr. Arreola notice and an opportunity to respond before terminating his DACA.
9    DACA SOPs 136-37.

10    Indeed, the court in *Gonzalez Torres*, 2017 WL 4340385, at *5-6, rejected the
11    same argument that the government makes here. The court explained that, except in
12    certain EPS cases, the SOPs require the issuance of a Notice of Intent to Terminate
13    before termination, and that an NTA charging presence without admission does not
14    constitute an EPS case under the SOPs.  *Id.* at *5.  The court also noted that the
15    government in that case—as in this one—"indefensibl[y]" conflated the CBP issuance
16    of an NTA with ICE's issuance of an NTA after a USCIS referral of an EPS case.  *Id.*
17    at *6.  Defendants have no response to these points.

18    Defendants mischaracterize the Napolitano Memorandum, attempting to
19    suggest that it authorizes CBP and ICE officers to terminate DACA grants
20    unilaterally.  *See* Opp. at 4, 25-26.  Indeed, were that the case, then the SOPs' careful
21    and detailed procedures governing DACA terminations would be negated.  To the
22    contrary, the Napolitano Memo expressly vested in *USCIS* the responsibility for
23    making DACA determinations.  *See* Napolitano Memo at 2-3 (directing USCIS to

24
25    termination in some cases, it also contains a specific exception stating that "this shall
     not preclude the authorization of employment pursuant to § 274a.12(c) of this part
26    *where appropriate*."  8 C.F.R. § 274a.14(a)(1)(ii) (emphasis added).  *See Alfaro-*
     *Orellana v. Ilchert*, 720 F.Supp. 792, 794 (N.D. Cal. 1989) (recognizing that 8 C.F.R.
27    § 274a.14(a)(1)(ii) "creates an exception for appropriate work authorizations under
28    § 274a.12(c))").

immediately begin establishing a process to adjudicate DACA applications).  While USCIS developed and implemented the DACA application process, DHS directed ICE to identify and assess for deferred action DACA-eligible individuals already in removal proceedings to prevent them from losing the opportunity to apply.  *Id.* at 2. Further, DHS sought to ensure that DACA-eligible individuals who encountered DHS officers while the DACA application process was implemented were assessed for deferred action to prevent these "low priority individuals from being placed into removal proceedings or removed from the United States."  *Id.*  Nothing in the Napolitano Memo supports the notion that, once USCIS implemented the DACA adjudication process and made a considered judgment to grant an individual DACA, the decision could be unilaterally undone by any ICE or CBP officer.  Neither does the Memo suggest that USCIS must treat another agency's issuance of an NTA charging presence without admission as determinative of its decision whether to terminate DACA.

Defendants' contention that USCIS has engaged in a consistent practice of terminating DACA automatically based on the issuance of an NTA, and is therefore entitled to deference, is not supported by the case law or the record.  Defendants have provided only 14 examples of cases in which USCIS has cancelled DACA on the basis of an NTA, when USCIS has granted DACA to more than 800,000 applicants since 2012 and approximately 1,500 grants have been terminated.  *See* Declaration of Katrina L. Eiland ("Eiland Decl.") ¶ 3, Ex. 1.  In any event, Defendants concede that the interpretation they advance is entitled to, at most, *Skidmore* deference, which is due "respect only insofar as [it] ha[s] the 'power to persuade,' which is a function of 'the thoroughness evident in [its] consideration' and 'the validity of [its] reasoning.'" *Resident Councils of Washington v. Leavitt*, 500 F.3d 1025, 1037 (9th Cir. 2007). Here, Defendants' interpretation not only conflicts with the plain language of the SOPs, but as explained above, such a policy would be arbitrary and capricious— indeed, it would mean that any individual enforcement officer could reverse USCIS'

18

considered judgement with the stroke of a pen, notwithstanding the fact that the individual continues to be eligible for DACA and that all DACA recipients, by definition, lack lawful immigration status.

### III. THE GOVERNMENT PROVIDES NO RESPONSE TO MR. ARREOLA'S DUE PROCESS ARGUMENT THAT, ALTHOUGH DACA IS DISCRETIONARY, ONCE GRANTED HE IS ENTITLED TO A FAIR PROCESS FOR REVOCATION.

While the court can grant Plaintiff's motion based on his non-constitutional APA claims, the government notably fails to address Mr. Arreola's core constitutional argument.  Mr. Arreola's procedural due process argument is based on a controlling line of cases holding that, even absent a claim of entitlement to an important benefit, once it is *conferred*, recipients have a protected property interest that requires a fair process before the government may take that benefit away.  *See* PI Mot. at 18-19 (citing, *inter alia*, *Bell v. Burson*, 402 U.S. 535, 539 (1971)). Thus, even though DACA is ultimately discretionary, *once granted*, the government cannot take it away without due process.

The government makes no attempt to refute this principle. Instead, it cites cases holding that, as a general matter, discretionary benefits do not give rise to a protected property interest.  *See* Opp. at 22-24 (citing cases). But Mr. Arreola never makes that contention, and none of those cases involve the *revocation* of a discretionary benefit that has *already* been conferred.

The government further argues that the DACA guidance does not give rise to a protected property interest, *see* Opp. at 23-24, but again this argument is a straw man. Mr. Arreola does not argue that the DACA program itself establishes a protected interest. Instead, he argues only that, having previously granted him DACA, the government may not strip him of it without a fair procedure.  Defendants' remaining arguments likewise miss the mark. Mr. Arreola does not premise his claim on a substantive right "to work in the United States without authorization," nor has he alleged a "right to family unity" or a deprivation of liberty.  Opp. at 21.

19

Finally, the government does not even attempt to suggest that its actions satisfied due process.  Indeed, the government could not since—as it concedes, *see* Opp. at 8-9—Mr. Arreola was stripped of DACA without any process whatsoever. This is especially true given that USCIS *already* provides a procedure whereby DACA recipients are afforded a reasoned explanation for its actions and an opportunity to present arguments and evidence.  *See* PI Mot. at 17.

The Court should likewise reject Defendants' contention that Mr. Arreola's due process claim fails for lack of prejudice.  *See* Opp. at 30-31.  The Ninth Circuit has questioned whether prejudice is even required under these circumstances.  *See Ching* 725 F.3d at 1156 (characterizing question of whether prejudice is required outside of a challenge to inadequate process in removal proceedings as "not settled").  In any event, Plaintiff's burden is a lenient one.  *See id.* at 1156-57 (finding that prejudice "standard does not demand absolute certainty; rather prejudice is shown if the violation *potentially* affects the outcome of the proceedings") (internal quotation marks omitted).  Indeed, courts "may infer prejudice even absent any allegations as to what the petitioner or his witnesses might have said" if given the opportunity. *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1077 (9th Cir. 2005).

Mr. Arreola easily satisfies this test. Defendants argue that CBP relied on significant evidence in issuing an NTA the night it arrested Mr. Arreola, and therefore that providing Mr. Arreola with an opportunity to present information is not likely to make a difference. Opp. at 29-31.  As explained previously, however, Mr. Arreola does not challenge *CBP's decision to issue an NTA*; rather, his claim challenges USCIS' subsequent decision to treat the NTA as automatically cancelling his DACA, without considering the grounds for the NTA and making a determination in the totality of the circumstances, and without providing him with notice, a reasoned explanation, or opportunity to respond.  Mr. Arreola's evidence would show, among other things, that Mr. Arreola strenuously denies being involved in smuggling aliens; the agency's own decisionmaker found his testimony credible that he was not; he has

20

no criminal history; he has been a model employee; and he is a primary financial supporter of his U.S. citizen and permanent resident family members, as well as a caretaker of his U.S. citizen sister with serious disabilities. *See* Doc. No. 16-3, Declaration of Jesús Alonso Arreola Robles ("Arreola Decl.") ¶¶ 3-6, 14-17, 41. Given that Mr. Arreola remains eligible for DACA, having the benefit of information about Mr. Arreola's positive equities and evidence that he did not engage in criminal conduct has at least the "potential" to impact USCIS' decision. *See Zolotukhinm*, 417 F.3d at 1077 (rejecting government's contention that petitioner could not show prejudice because he lacked good character and would not prevail on his claims even if given a fair hearing).

In sum, the termination of Mr. Arreola's DACA and EAD in the absence of a fair process violates his procedural due process rights.

## IV.    THE REMAINING INJUNCTION FACTORS FAVOR MR. ARREOLA.

The government does not dispute that the harm it is causing Mr. Arreola is irreparable. Indeed, it could not do so given that the Ninth Circuit has expressly found that undermining DACA recipients' employment constitutes irreparable harm. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("The irreparable nature of Plaintiffs' injury is heightened by Plaintiffs' young age and fragile socioeconomic position. Setbacks early in their careers are likely to haunt Plaintiffs for the rest of their lives."); *see also Gonzalez Torres*, 2017 WL 4340385, at *6 (finding irreparable harm caused by loss of employment and "sense of well-being" following termination of DACA); *Colotl*, 2017 WL 2889681, at *12; PI Mot. at 21-22.

The government instead suggests that Mr. Arreola's claims are not urgent because his DACA was terminated eight months before the filing of this case. Opp. at 11. That delay, in additional to being inconsequential, reflects Mr. Arreola's good faith attempts to advocate with the agency to reconsider its unreasoned decision. *See, e.g.*, Kwon Decl. ¶ 2, Ex. 1 (Plaintiff's counsel correspondence with ICE); *Id.* ¶ 3, Ex. 2 (Plaintiff's counsel correspondence with USCIS); *see also* Eiland Decl. ¶ 4

(describing efforts to engage legislators to inquire with DHS regarding reinstatement of Mr. Arreola's DACA).  The government does not and cannot contend that Mr. Arreola—who lost his job at Chateau Marmont and is expecting a child at the end of December, Arreola Decl. ¶¶ 3, 40-41—does not face imminent irreparable harm.  And Mr. Arreola's situation bears no resemblance to that in *Quach v. Bank of Am., Nat. Ass'n*, No. 12–5037 EJD, 2012 WL 4498873, at *4 (N.D. Cal. Sept. 28, 2012), Opp. at 11, in which the plaintiff waited until two days before a trustee sale to seek a temporary restraining order challenging it.  Here, Mr. Arreola's DACA grant would have remained valid until August 2018.  In any event, a months-long delay "is not particularly probative in the context of ongoing, worsening injuries." *Arc of California v. Douglas*, 757 F.3d 975, 990–91 (9th Cir. 2014) (finding months-long delay "prudent").  The irreparable harm to Mr. Arreola is ongoing and worsening: the loss of his work permit will become even more acute with the birth of his child in less than two months.  Arreola Decl. ¶¶ 3, 40-41.  Moreover, because his DACA grant would have expired in August 2018, if his revocation is not preliminarily enjoined, he may lose the opportunity for meaningful relief altogether.

The government also does not dispute that requiring it to comply with the APA and the Constitution would serve the public interest.  *See* PI Mot. at 22.  Nor does it dispute the interests of Mr. Arreola's U.S. citizen and permanent resident family members in a fair and reasoned determination of whether his DACA should be terminated. *See id.* at 21-22.  Nor does the government explain how re-evaluating the termination of Mr. Arreola's DACA under its own standards would cause the agency harm—especially when it has such review procedures already in place.  *See id*.  And although the government certainly has an interest in the enforcement of the immigration laws, the agencies administering those laws are required to act lawfully. In sum, the remaining factors support a preliminary injunction.

Defendants' suggestion that enjoining the termination of Mr. Arreola's DACA would require a mandatory injunction is unavailing.  A prohibitory injunction

22

1   maintains the status quo, which is defined as "not simply any situation before the

2   filing of the lawsuit, but rather the last uncontested status that preceded the parties'

3   controversy." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124

4   (9th Cir. 2006).  Here, that "last uncontested status" is when Mr. Arreola had DACA

5   and an EAD.  Because the preliminary injunction Mr. Arreola requests would merely

6   preserve that status quo by enjoining Defendants from enforcing the unlawful

7   termination of his DACA, he does not request a mandatory injunction.  *See, e.g.*,

8   *Auntie Anne's, Inc. v. Wang*, No. 14-cv-01049, 2014 WL 11728722, at *7 (C.D. Cal.

9   July 16, 2014) (explaining that a mandatory injunction "requir[es] affirmative conduct

10  that goes well beyond the status quo"); *San Diego Minutemen v. California Bus.*

11  *Transp. & Hous. Agency's Dep't of Transp.*, 570 F. Supp. 2d 1229, 1256 (S.D. Cal.

12  2008) (enjoining defendant's revocation of plaintiff's adopt-a-highway permit likely

13  in violation of First Amendment preserved the status quo).[12]

14                          **CONCLUSION**

15          For these reasons, the Court should grant Plaintiff's Motion for a Preliminary

16  Injunction and order Defendants to reinstate Mr. Arreola's DACA and work

17  authorization pending a fair procedure—including reasonable notice, a reasoned

18  explanation, and an opportunity to be heard—through which he may challenge any

19  revocation decision consistent with the APA and the Due Process Clause.

20  Dated: November 6, 2017                    Respectfully submitted,

21

22                                            /s/ Katrina L. Eiland
                                             Katrina L. Eiland
23                                            Jennifer Chang Newell
                                             Michael K. T. Tan*
24

---

25  [12]      Defendants further misunderstand the nature of Mr. Arreola's requested relief
    by suggesting that he has asked for a permanent enjoinder that would prevent
26  Defendants from terminating his DACA for the remainder of its validity.  *See* Opp. at
    12.  On the contrary, Mr. Arreola has requested that the Court enjoin the revocation of
27  his DACA and prohibit Defendants from terminating it again without complying with
    its own rules, as well as with the APA and due process.
28

David Hausman*
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT

Ahilan T. Arulanantham
Michael Kaufman
Dae Keun Kwon
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

*Attorneys for Plaintiffs*

*admitted pro hac vice