UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**     Order GRANTING Plaintiff's motion for a preliminary injunction

    Before the Court is a motion for a preliminary injunction filed by Plaintiff Jesus Alonso Arreola Robles ("Plaintiff"). *See* Dkt. # 16 ("*Mot.*"). Defendants Elaine C. Duke, James McCament, Mark J. Hazuda, Susan M. Curda, Thomas D. Homan, David Marin, and Kevin K. McAleenan ("Defendants") oppose the motion, *see* Dkt. # 23 ("*Opp.*"), and Plaintiff timely replied, *see* Dkt. # 25 ("*Reply*"). The Court held a hearing on this matter on November 20, 2017, and also consulted supplemental authority. Having considered the moving papers and oral arguments, the Court **GRANTS** Plaintiff's motion.

I.     Background

    This action stems from the termination of Plaintiff's Deferred Action for Childhood Arrivals ("DACA").

    A.     The DACA Program

    Deferred action is a longstanding form of administrative action by which the Executive Branch decides, for humanitarian or other reasons, to refrain from seeking a noncitizen's removal and to authorize his or her continued presence in the United States. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999). On June 15, 2012, the Department of Homeland Security ("DHS") announced DACA, a deferred action program for young immigrants who came to the United States as children and are present in the United States without formal immigration status, in a memorandum issued by Secretary Janet Napolitano ("the Napolitano Memo"). *See Declaration of Dae Kuen Kwon*, Dkt. # 16-4 ("*Kwon Decl.*"), ¶ 10, Ex. 9 ("Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children") at 2 ("*Napolitano Memo*"). Although DHS announced on September 5,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

2017 that it was planning to rescind the DACA program, officials confirmed that the same program rules would continue to apply until its end. *Mot.* 5:6–8.

Under DACA, young immigrants who entered the United States as children and meet specified educational and residency requirements, and who pass extensive criminal background checks, are eligible to receive deferred action. *See Napolitano Memo* at 1–2. A necessary predicate for DACA eligibility is that an individual must lack a lawful immigration status. *See Kwon Decl.* ¶ 21, Ex. 20 ("National Standard Operating Procedures (SOP): Deferred Action for Childhood Arrivals (DACA)") at 44 ("*DACA SOP*"). Deferred action under DACA is granted to qualifying individuals for a period of two years, subject to renewal, *see Napolitano Memo* at 2–3, and DACA recipients may obtain an Employment Authorization Document ("EAD") and a Social Security Number. *Mot.* 4:8–10.

DHS's DACA Standard Operating Procedures ("DACA SOPs") set forth the procedures that U.S. Citizenship and Immigration Services ("USCIS") must follow in both granting and terminating DACA. *See DACA SOP* at 16; *see also Colotl v. Kelly*, No. 1:17-CV-1670-MHC, 2017 WL 2889681, at *4 (N.D. Ga. June 12, 2017) ("The SOP states that it is applicable to all personnel performing adjudicative functions and the procedures to be followed are not discretionary.").

B.   Plaintiff's History

Plaintiff is a 23-year-old resident of Los Angeles who has lived in the United States since the age of one and has received deferred action through DACA three times—in 2012, 2014, and 2016. *Mot.* 1:2–6; *Declaration of Jesus Alonso Arreola Robles*, Dkt. # 16-3 ("*Arreola Decl.*"), ¶¶ 1, 10–11; *Kwon Decl.* ¶¶ 5–6, 23–25, Exs. 4 (2012 DACA Application), 5 (2012 DACA Approval Notice), 22 (2014 DACA Renewal Application), 23 (2016 DACA Renewal Application), 24 (2016 DACA Renewal Approval Notice). This final grant was set to be valid until August 19, 2018. *Mot.* 6:23–26; *Kwon Decl.* ¶ 25, Ex. 24. Using the accompanying EAD, Plaintiff worked two jobs, as a dishwasher and then a cook at Chateau Marmont in West Hollywood and as a driver for Uber and Lyft. *Mot.* 7:1–5; *Arreola Decl.* ¶¶ 13–15. He shared his earnings with his family and paid half the rent for their home. *Mot.* 7:5–6; *Arreola Decl.* ¶ 16. Plaintiff has never been charged with or convicted of any crime. *Mot.* 7:7; *Arreola Decl.* ¶ 17.

In February 2017, Plaintiff claims that a friend asked him to drive his cousin from the Los Angeles area to the San Diego area, to pick up the friend's uncle and another cousin and bring them back to Los Angeles—a task for which he would be paid $600. *Mot.* 7:9–14; *Arreola Decl.* ¶ 18. Plaintiff accepted, and while he and his customer were near San Diego, the latter was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

arrested by an agent of the U.S. Customs and Border Patrol ("CBP"). *Mot.* 7:15–23; *Arreola Decl.* ¶¶ 19–23. Although Plaintiff claims that he informed the CBP agent of his DACA status, he was also arrested on suspicion of aiding in the smuggling of undocumented immigrants. *Mot.* 7:24–27; *Arreola Decl.* ¶ 23. Defendants note that, at the time, Plaintiff provided authorities conflicting information, both in terms of the nature of his assignment and the amount he was to be paid for completing it. *See Opp.* 7:1–8:5.

CBP detained Plaintiff and issued him a Notice to Appear ("NTA"), initiating removal proceedings and charging him as removable due to his presence in the United States without admission under the Immigration and Nationality Act ("INA"). *Mot.* 8:3–7; *Kwon Decl.* ¶ 4, Ex. 3 (Notice to Appear). Plaintiff was not, however, charged with any crime. *Mot.* 8:7–8; *Arreola Decl.* ¶ 29. On March 2, 2017, Plaintiff received a bond hearing before an immigration judge and was released from immigration detention the following day. *Mot.* 8:9–9:3; *Arreola Decl.* ¶¶ 32, 35–36. Shortly thereafter, on March 6, Plaintiff received a Notice of Action from USCIS notifying him that his DACA and EAD were "terminated automatically as of the date [his] NTA was issued." *Kwon Decl.* ¶ 9, Ex. 8 (Notice of Action) at 1. Plaintiff reports that he was not provided with prior notice of his DACA termination, a reasoned explanation for the decision, or an opportunity to respond to the Notice of Action or otherwise contest the decision. *Mot.* 9:10–13; *Arreola Decl.* ¶ 38. Subsequent efforts by Plaintiff to seek redress from USCIS were unsuccessful. *Mot.* 9:14–22.

As a result of losing his DACA and EAD, Plaintiff lost his job at Chateau Marmont and can no longer work as a driver for Uber of Lyft. *Id.* 9:23–10:1; *Arreola Decl.* ¶ 40. His hardship has been magnified by the fact that he and his partner are expecting their first child later this year. *Id.* 10:1–3; *Arreola Decl.* ¶ 40.

II.     Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A party seeking a preliminary injunction must make a "clear showing" of: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20, 22 (2008).

III.    Discussion

    A.     Likelihood of Success on the Merits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

*i. Jurisdiction*

As a threshold matter, Defendants challenge this Court's ability to review the revocation of Plaintiff's DACA, based on both the Administrative Procedure Act ("APA") and the REAL ID Act of 2005.

*a. Jurisdiction under the APA*

Although the APA permits judicial review of agency actions where "there is no other adequate remedy in a court," 5 U.S.C. § 704, Defendants note that the APA precludes review of agency decisions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and that the Supreme Court has held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Because "[i]ndividual DACA decisions fall squarely within that category of agency discretion," Defendants conclude that "[t]he APA specifically precludes review of the action that Plaintiff challenges." *Opp.* 13:24, 14:15.

The Court disagrees. The jurisdictional bar cited by Defendants applies only where there is "no meaningful standard against which to judge the agency's exercise of discretion." *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003) (quoting *Heckler*, 470 U.S. at 830). By contrast, a court can review an agency decision when, like here, there are "statutes, regulations, established agency policies, or judicial decisions that provide a meaningful standard against which to assess" an agency's action. *Mendez-Gutierrez*, 340 F.3d at 868; *see also ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003); *Socop-Gonzalez v. Immigration & Naturalization Serv.*, 208 F.3d 838, 844 (9th Cir. 2000)) ("Even where statutory language grants an agency 'unfettered discretion,' its decision may nonetheless be reviewed if regulations or agency practice provide a 'meaningful standard by which this court may review its exercise of discretion.'").

Here, the decision to revoke DACA is governed by both the Napolitano Memo and the DACA SOPs, and the Ninth Circuit has repeatedly found that APA jurisdiction exists where "discretion has been legally circumscribed by various memoranda." *Alcaraz v. Immigration & Naturalization Serv.*, 384 F.3d 1150, 1161 (9th Cir. 2004); *see also Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011) (looking to an agency's interim certification standards to "supply the standard against which we can judge the agency's decision-making"); *Mendez-Gutierrez*, 340 F.3d at 868 (noting that the absence of a specific statute or regulation "does not . . . mean that there are no meaningful standards against which to evaluate" an agency's decision where other rules and regulations apply). Other courts that have similarly

Case 5:17-cv-02048-PSG-SHK   Document 31   Filed 11/20/17   Page 5 of 16   Page ID #:710

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

examined the Napolitano Memo and DACA SOPs have also concluded that they contain detailed policy directives that provide courts with the standards needed to review DACA revocation. *See Gonzalez Torres v. U.S. Dep't of Homeland Sec.*, No. 17cv1840 JM(NLS), 2017 WL 4340385, at *5 (S.D. Cal. Sept. 29, 2017) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Alcaraz*, 384 F.3d at 1162) ("Defendants' failure to follow the termination procedures set forth in the DACA SOP is arbitrary, capricious, and an abuse of discretion."); *Colotl*, 2017 WL 2889681, at *10 ("Defendants' argument that § 701(a) of the APA bars this Court from reviewing an agency's non-discretionary review process fails."); *see also Texas v. United States*, 809 F.3d 134, 170 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *cert. granted*, 136 S. Ct. 906 (2016) (determining that the "grant of lawful presence and accompanying eligibility for benefits is a substantive rule").

Plaintiff correctly notes that he "challenges USCIS' determination that his DACA should be automatically terminated based on CBP's issuance of an NTA, not any eventual enforcement decision in removal proceedings." *Reply* 11:3–5. Because DACA eligibility and revocation is governed by the aforementioned regulations, the Court has a meaningful standard on which to base the agency's decision, and so judicial review is not barred by the APA. *See Ramirez Medina v. U.S. Dep't of Homeland Sec.*, No. C17-0218RSM, 2017 WL 5176720, at *8 (W.D. Wash. Nov. 8, 2017) ("Defendants' alleged failure to follow the procedures detailed in the DACA SOP does not implicate agency discretion. Therefore, the jurisdiction-stripping provisions of . . . § 701(a) are not applicable to prevent this Court from determining whether Defendants complied with their non-discretionary procedures.").

        *b.*       *Jurisdiction under § 1252(g)*

Defendants next point to statutory language amended by the REAL ID Act, which mandates that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). The Supreme Court has explained that § 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno*, 525 U.S. at 944 n.9. Accordingly, Defendants assert that "regardless of how Plaintiff seeks to frame the issue, 8 U.S.C. § 1252(g) precludes judicial review of the Government's exercise of its prosecutorial discretion." *Opp.* 17:15–16.

Defendants interpret § 1252(g) too broadly, as evidenced by the Supreme Court's *Reno* decision. There, in response to the "unexamined assumption that § 1252(g) covers the universe of deportation claims—that it is a 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review,'" the Supreme Court opined that "what

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

§ 1252(g) says is much narrower." *Reno*, 525 U.S. at 482. It concluded that "[t]he provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphases in original). Section 1252(g) does *not* preclude review of "many other decisions or actions that may be part of the deportation process." *Id.* Consistent with this guidance, the Ninth Circuit has narrowly construed § 1252(g), distinguishing between the narrow category of actions that courts cannot review and those adjacent actions that are within their jurisdiction. In *Alcaraz*, for example, the Ninth Circuit held that even a claim closely related to the initiation of removal proceedings is not barred by § 1252(g), so long as it does not challenge the decision to commence proceedings itself. *Alcaraz*, 384 F.3d at 1160–61; *see also Catholic Soc. Servs. v. Immigration & Naturalization Serv.*, 232 F.3d 1139, 1150 ("[Section 1252(g)] applies only to the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings.").

Here, Plaintiff is challenging neither the issuance of the NTA nor the CBP's decision to commence removal proceedings. Instead, he challenges the USCIS's separate and independent decision to revoke his DACA *on that basis*, which is independent of the limited category of decisions covered by § 1252(g). *See Ramirez Medina*, 2017 WL 5176720, at *6 ("[T]he Court ultimately finds that none of the statutes relied upon by Defendants applies to the narrower issues presented in this case; specifically, whether Defendants complied with their own non-discretionary procedures."); *Gonzalez Torres*, 2017 WL 4340385, at *4–5.

Furthermore, the Ninth Circuit has held that while § 1252(g) precludes review of the three specified discretionary decisions, it does *not* bar review of legal questions relating to those discretionary decisions. *See United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority."); *see also Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While this provision bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions."). Here, Plaintiff brings a legal challenge to his revocation under the APA and the due process clause. This is the sort of purely legal question that, although related to a discretionary decision, is nevertheless permitted by the Ninth Circuit.

Because Plaintiff is offering a legal challenge to a decision that is not within the limited category of discretionary actions enumerated by the statute, the Court concludes that § 1252(g) does not deprive it of jurisdiction over this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

### c. *Jurisdiction under §§ 1252(a)(5) and 1252(b)(9)*

Lastly, Defendants contend that other sections of the REAL ID Act "bar [Plaintiff] from raising his claims in district court." *Opp.* 18:2–3. Section 1252(a)(5) requires that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) further provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). As one court characterized it, this statutory scheme was designed to "put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings." *Aguilar v. U.S. Immigration & Customs Enf't*, 510 F.3d 1, 9 (1st Cir. 2007).

However, although the Supreme Court has explained that the purpose of § 1252(b)(9) is "to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals," it "applies only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 313 (2001). Section 1252(a)(1), like § 1252(a)(5), refers to "[j]udicial review of a final removal" order. 8 U.S.C. § 1252(a)(1); *see also Singh v. Gonzalez*, 499 F.3d 969, 978 (9th Cir. 2007) ("By virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal.").

Again, Plaintiff does not seek judicial review of an order of removal; indeed, his challenge is independent of any removal proceeding. *See Gonzalez Torres*, 2017 WL 4340385, at *5 ("Plaintiff brings a procedural challenge to termination of his DACA status, an issue independent from any removal proceedings."). Furthermore, the Ninth Circuit has held that § 1252(b)(9) does not deprive district courts of jurisdiction where a claim could not have been litigated in removal proceedings and the noncitizen would otherwise "have had no legal avenue to obtain judicial review of this claim." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016); *see also Mamigonian v. Biggs*, 710 F.3d 936, 945 (9th Cir. 2013) (permitting an APA action where the immigration judge "would be without jurisdiction" to adjudicate the claim and so "review would be unavailable" to plaintiff). An immigration judge in a removal proceeding does *not* have the power to grant or deny deferred action, or to review or reverse an agency's decision to revoke it. *See Gonzalez Torres*, 2017 WL 4340385, at *6 ("[A]n immigration judge has no jurisdiction to reinstate DACA status."); *see also Napolitano Memo* at 2–3 (conveying power to grant DACA to agencies); *Matter of Quintero*, 18 I. & N. Dec. 348, 350 (B.I.A. 1982)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

("[N]either the immigration judge nor the Board may grant [deferred action] status or review a decision of the District Director to deny it."). Therefore, Plaintiff could not have challenged the revocation of his DACA at a removal proceeding, and so under Ninth Circuit precedent, jurisdiction is not barred.

Plaintiff here is not challenging a final removal order, and the action he brings is premised on a claim that could not have been brought in a removal proceeding. Therefore, §§ 1252(a)(5) and 1252(b)(9) do not apply and do not deprive this Court of jurisdiction.

   ii.  *Merits of Plaintiff's Claims*

Because the Court concludes that it has jurisdiction over this action, it will now consider the merits of Plaintiff's claims.

   a.  *APA Claim*

Plaintiff argues that "Defendants have indicated that they terminated [his] DACA based on the issuance of an NTA—one that charges [Plaintiff] with being removable because of presence without admission in the United States. For multiple reasons, that decision was arbitrary and capricious and contrary to law in violation of the APA." *Mot.* 10:28–11:3.

Under the APA, "agency action must be based on non-arbitrary, 'relevant factors.'" *Judulang v. Holder*, 565 U.S. 42, 55 (2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)). The "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang*, 565 U.S. at 53. "When reviewing an agency action, we must assess, among other matters, 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *State Farm*, 463 U.S. at 43).

The Court agrees with Plaintiff that his case is analogous to that which the Supreme Court considered in *Judulang*. *See Mot.* 11:12–22. There, the Supreme Court considered a Board of Immigration Appeals ("BIA") rule governing eligibility for a form of relief—suspension of deportation—which, like DACA, was not provided for in the INA and was therefore discretionary. *See Judulang*, 565 U.S. at 46–47. Despite this discretionary quality, the Supreme Court nonetheless determined that the rules applied by the agency must reflect reasoned decisionmaking, admonishing that "[a] method for disfavoring deportable aliens that bears no relation to these matters—that neither focuses on nor relates to an alien's fitness to remain in the country—is arbitrary and capricious." *Id.* at 55. The BIA's rule was invalidated because it was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

based on "a matter irrelevant to the alien's fitness to reside in this country," which indicated that "the BIA ha[d] failed to exercise its discretion in a reasoned manner." *Id.* at 53.

Plaintiff has put forth a compelling argument that, like the BIA's invalidated rule in *Judulang*, the decision to automatically terminate Plaintiff's DACA and EAD based on the issuance of an NTA fails the requirements of the APA. First, based on the Napolitano Memo and the DACA SOPs, a noncitizen's deportability due to unauthorized presence in the United States—the basis for Plaintiff's NTA—provides no relevant basis for terminating DACA. These guidelines enumerate the relevant considerations for a DACA grant, and not only is unauthorized presence an unmentioned factor, but the program was *specifically designed* for persons without lawful immigration status. *See, e.g.*, *DACA SOC* at 44 (indicating that an individual "may be favorably considered for DACA if" he/she "[e]ntered without inspection" or his/her "lawful immigration status expired"). The program's rules also make clear that even noncitizens who are, have been, or will be placed in removal proceedings are nonetheless eligible for DACA. *See Napolitano Memo* at 2; *DACA SOP* at 71 ("Individuals in removal proceedings may file a DACA request."); *Kwon Decl.* ¶ 17, Ex. 16 (Statement of Assistant Secretary Michael Dougherty and Acting Director James McCament) at 2 ("The 2012 memorandum also made clear that individuals could be considered for DACA even if they were already in removal proceedings or were subject to a final removal order."). Accordingly, the Court agrees that "the issuance of an NTA charging presence without admission does not provide a reasoned basis for terminating DACA." *Mot.* 12:10–11.

Furthermore, the guidelines even address the issuance of an NTA. The DACA SOPs provide that if an NTA is issued against a DACA applicant, USCIS should "proceed with adjudication . . . , taking into account the basis for the NTA"—even if the NTA is based on a public service concern. *See Kwon Decl.*, ¶ 22, Ex. 21 ("Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removal Aliens") at 4 ("[U.S. Immigration and Customs Enforcement ("ICE")]'s issuance of an NTA allows USCIS to proceed with adjudication . . . , taking into account the basis for the NTA."); *DACA SOP* at 93 (providing that if ICE accepts a case referred to it by USCIS during the DACA application process, then USCIS "will follow the standard protocols outlined in the [aforementioned] NTA memorandum"). In these cases, USCIS is required to review all relevant circumstances, and may still grant a DACA request despite an NTA "[i]f a DACA requestor has been placed in proceedings on a ground that does not adversely impact the exercise of prosecutorial discretion." *DACA SOP* at 75; *see also id.* at 74 ("Final removal orders . . . should be reviewed carefully to examine the underlying grounds for removal."). Consequently, the Court agrees with Plaintiff's conclusion that, "[g]iven that the filing of an NTA against a DACA applicant, or even the issuance of a final order of removal against a DACA applicant, does not

Case 5:17-cv-02048-PSG-SHK Document 31 Filed 11/20/17 Page 10 of 16 Page ID #:715

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

render noncitizens ineligible for the program, DHS' decision to find [Plaintiff] ineligible on this basis and automatically terminate his DACA is arbitrary and irrational." *Mot.* 13:17–21.

In addition, as Plaintiff notes, "USCIS's decision to terminate DACA automatically based on the filing of an NTA . . . left the question of whether [Plaintiff] continued to warrant a DACA grant and EAD solely up to a CBP officer's charging decision in issuing an NTA"—a result that is at odds with the Supreme Court's decision in *Judulang*. *Mot.* 14:17–20. That opinion emphasized that "yet another" arbitrary quality of the BIA's rule was that "the outcome of the Board's comparable-grounds analysis itself may rest on the happenstance of an immigration official's charging decision." *Judulang*, 565 U.S. at 57. The Supreme Court objected to the fact that "everything hangs on the fortuity of an individual official's decision," noting that it had previously "reversed an agency decision that would 'make [an alien's] right to remain here dependent on circumstances so fortuitous and capricious.'" *Id.* at 58 (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947)). This is precisely the case here. Because Plaintiff's DACA was revoked automatically due to the issuance of the NTA, everything hung on the fortuity of one CBP officer's decision.

Finally, there is the issue of departure. Agencies are free to change course and depart from a prior decision, but they are also "obligated to supply a reasoned analysis for the change." *State Farm*, 463 U.S. at 42; *see also Federal Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("[T]he agency must show that there are good reasons for the new policy."). Here, on three occasions—in 2012, 2014, and 2016—DHS evaluated Plaintiff's DACA applications and determined that he was eligible for deferred action and an EAD. *See Kwon Decl.* ¶¶ 4–5, 23–25, Exs. 3–4, 22–24. These decisions were based on extensive background checks and a review of Plaintiff's school records and other documentation. His 2016 approval notice provided that "[u]nless terminated, this decision to defer removal action will remain in effect for 2 years," indicating its validity through August 19, 2018. *Kwon Decl.* ¶ 25, Ex. 24 at 1. The notice specified that "[s]ubsequent criminal activity . . . is likely to result in termination of your deferred action." *Id*. However, although Plaintiff has not been charged or convicted of any criminal activity, this decision was reversed and his DACA was revoked. The only explanation for this reversal provided to Plaintiff was that it was "terminated automatically" due to the NTA. *Kwon Decl.* ¶ 9, Ex. 8 at 1. The Court agrees that "USCIS's one-sentence explanation" fails to "provide 'good reasons' for the agency's change in position, as required by the APA." *Mot.* 16:1–3; *see also Organized Vill. Of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (quoting *Fox Television Stations*, 556 U.S. at 516; *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015)) (explaining that an agency is "required to provide a 'reasoned explanation . . . for disregarding' the 'facts and circumstances' that underlay its previous decision") (alternation in original). As Plaintiff accurately concludes, given that *all* DACA recipients are necessarily removable due to their unauthorized presence, "[t]he agency's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

reliance on an NTA citing [Plaintiff's] presence without admission simply fails to explain, much less justify, the agency's decision to reverse course and terminate his DACA." *Mot.* 16:10–12. Such an arbitrary and unexplained decision fails to address Plaintiff's substantial reliance interests, which also runs counter to the Supreme Court's mandate. *See Fox Television Stations*, 556 U.S. at 515 (holding that an agency must "provide a more detailed justification" when "its prior policy has engendered serious reliance interests that must be taken into account").

In opposition, Defendants argue that that DHS did not violate its internal guidelines because "where CBP or ICE issues a Notice to Appear [NTA], the DACA SOP provides that DACA and the EAD terminate automatically." *Opp.* 25:3–4. However, the DACA SOPs do not support this assertion. There appears to be only one narrow circumstance in which automatic termination based on an NTA is appropriate—when an NTA is issued after USCIS determines that a disqualifying offense or public safety concern is deemed to be "Egregious Public Safety" ("EPS"). *DACA SOP* at 137. This is not the case here, as Plaintiff's NTA was issued on the basis of presence without admission, not EPS. Defendants point to no provision in the DACA SOPs that permits automatic termination as a result of an NTA based on unauthorized presence.[1] Indeed, "unless there are criminal, national security, or public safety concerns," the DACA termination guidelines prescribe the issuance of a Notice of Intent to Terminate and require that "[t]he individual should be allowed 33 days to file a brief or statement contesting the grounds cited." *Id.* at 137–38. When the *Gonzalez Torres* court was presented with a similar argument from the government—that "the NTA issued by [CBP] in connection with removal proceedings for Plaintiff was tantamount to ICE issuing a NTA terminating DACA status pursuant to the DACA SOP"—the Court deemed the government's position "indefensible," noting that NTAs based on an EPS designation and NTAs based on unauthorized presence "are not fungible, or 'flip sides of the same coin.'" *Gonzalez Torres*, 2017 WL 4340385, at *6.[2]

Defendants further suggest that the Napolitano Memo "instructed ICE and CBP to 'immediately exercise their discretion on an individual basis' in determining whether to issue an NTA or defer action." *Opp.* 25:23–26:1. The Court agrees with Plaintiff that "Defendants

---

[1] Defendants point to the DACA SOPs' appendix, which includes the form language for the termination notice that Plaintiff received, but this language itself does not indicate *when* such a notice should be dispatched. *See DACA SOP* App. I at 2.

[2] As for the EAD, Defendants also cite statutory authority for its automatic revocation. *See Opp.* 25 n.16. Although the regulations do provide for termination of work authorization when an NTA is issued in some cases, *see* 8 C.F.R. § 274a.14(1)(ii), it also contains an exception for work permits granted to, among others, "alien[s] who [have] been granted deferred action." 8 C.F.R. § 274a.12(c)(14); *see also Alfaro-Orellana v. Ilchert*, 720 F. Supp. 792, 794 (N.D. Cal. 1989) (noting that § 274a.14(a)(1)(ii) "is itself ambiguous, because it creates an exception for appropriate work authorizations under § 274a.12(c)").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

mischaracterize the Napolitano Memo." *Reply* 17:18. The Memo instructed *USCIS*, not ICE or CBP, to make DACA determinations. *See Napolitano Memo* at 2–3 ("USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals."). The role of ICE and CBP was not to develop or manage the program, but instead to "immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings" as DACA was developed. *Id.* at 2. The Court agrees that "[n]othing in the Napolitano Memo supports the notion that, once USCIS implemented the DACA adjudication process and made a considered judgment to grant an individual DACA, the decision could be unilaterally undone by any ICE or CBP officer"—indeed, if such were the case, "then the SOPs' careful and detailed procedures governing DACA terminations would be negated." *Reply* 17:20–21, 18:8–11.

Alternatively, Defendants argue that "Defendant DHS's reading of its own authority to provide for automatic termination of DACA with the issuance of NTAs is well supported by Defendant's consistent practice, and is thus 'entitled to substantial weight.'" *Opp.* 26:1–9 (quoting *Chemehuevi Indian Tribe v. Brown*, No. ED CV 16-1347-JFW (MRWx), 2017 WL 2971864, at *8 n.9 (C.D. Cal. Mar. 30, 2017)). The Court does not find this availing. The evidence Defendants point to for this "consistent practice" is *fourteen* instances when DACA was automatically terminated due to an NTA. *See Declaration of Ron Thomas*, Dkt. # 23-2, ¶ 5. The Court does not find such a practice "consistent" when "USCIS has granted DACA to more than 800,000 applicants since 2012 and approximately 1,500 grants have been terminated." *Reply* 18:19–20. At any rate, Defendants imply that such a practice is only entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and is therefore due "respect only insofar as [it has] the power to persuade, which is a function of the thoroughness evident in [its] consideration and the validity of [its] reasoning." *Resident Councils of Wash. v. Leavitt*, 500 F.3d 1025, 1037 (9th Cir. 2007) (internal quotation marks omitted). The Court cannot afford this practice much respect given that it apparently conflicts with the plain language of the DACA SOPs and would mean that "any individual enforcement officer could reverse USCIS' considered judgement with the stroke of a pen, notwithstanding the fact that the individual continues to be eligible for DACA and that all DACA recipients, by definition, lack lawful immigration status." *Reply* 18:28–19:3.

Finally, Defendants point to additional information regarding Plaintiff's arrest—"including an interview in which Plaintiff first lied about and later admitted to his illegal activity"—to argue that "Defendants reasonably relied on these facts to find that Plaintiff was involved in a human smuggling operation, and led to the discretionary determination to issue an NTA, which simultaneously terminated Plaintiff's DACA and EAD." *Opp.* 26:11–23. Whatever inconsistencies may be found in, and whatever suspicions may arise from, the evidence surrounding Plaintiff's arrest, they are not relevant to his APA claim. Courts review

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

agency action according to the contemporaneous reasons given by the agency and disregard alternative rationales presented during litigation. *See Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997) ("The rule barring consideration of *post hoc* agency rationalizations operates where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification for that same determination when it is later reviewed by another body."); *see also Toor v. Lynch*, 789 F.3d 1055, 1064 (9th Cir. 2015) (quoting *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008)) ("[W]e may affirm the BIA based only on 'the explanations offered by the agency.'"); *Shirrod v. Director, Office of Workers' Comp. Programs*, 809 F.3d 1082, 1087 n.4 (9th Cir. 2015) ("[W]e review only what [the agency] did, not what [it] could have done."). Here, USCIS made clear to Plaintiff that his DACA was terminated automatically due to CBP's issuance of the NTA. This was the only rationale provided, and so it is the only one that the Court will consider, especially since there is no evidence that USCIS relied on anything other than the NTA itself in making its decision. *See Center for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)) ("When reviewing an agency decision, 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'").

In short, Defendants' arguments in opposition do not sway the Court from its conclusion that Plaintiff makes a compelling argument that the decision to terminate his DACA was arbitrary and capricious and in violation of the APA. Accordingly, he has demonstrated a sufficient likelihood of success on the merits, and so the first factor in the preliminary injunction inquiry tips in Plaintiff's favor.

        *b.*    *Due Process Claim*

Because the Court finds that Plaintiff's APA claim satisfies the first requirement, it need not consider his due process claim at this time.

    B.    <u>Irreparable Injury</u>

In describing the nature of his irreparable harm, Plaintiff focuses on the economic consequences of losing his DACA and EAD, arguing that the revocation "has derailed [his] career." *Mot.* 21:9. He lost his job at Chateau Marmont (despite what he characterizes as his expectation to "move up through the ranks") and can no longer work as a driver. *Id.* 21:14–16, 21:26–28. This argument is compelling, as the Ninth Circuit has held that "loss of opportunity to pursue [one's] chosen profession" constitutes irreparable harm. *Enyart v. National Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("We have frequently recognized the severity of

Case 5:17-cv-02048-PSG-SHK   Document 31   Filed 11/20/17   Page 14 of 16   Page ID #:719

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

depriving a person of the means of livelihood."). Moreover, the Ninth Circuit has specifically found irreparable harm in a similar case involving DACA recipients. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (finding irreparable harm where professional opportunities are limited); *see also id.* ("The irreparable nature of Plaintiffs' injury is heightened by Plaintiffs' young age and fragile socioeconomic position. Setbacks early in their careers are likely to haunt Plaintiffs for the rest of their lives."). Plaintiff has demonstrated that his earnings are used to support his family, *see Arreola Decl.* ¶¶ 2–5, 16, which also suggests irreparable harm. *See Gonzalez Torres*, 2017 WL 4340385, at \*6 ("The potential harm caused by Defendants' conduct includes the loss of employment, a core benefit under DACA. The deprivation of employment impacts Plaintiff's ability to financially provide for himself and his family.").

In opposition, Defendants suggest that "the imminence of the harm Plaintiff cites is doubtful given the period of time that has elapsed between his loss of employment authorization and the filing of this action," noting that "Defendants terminated Plaintiff's DACA eight months ago, and Plaintiff's failure to raise this action until now casts doubt on his claims of urgent, irreparable harm unless his DACA and employment authorization are reinstated immediately." *Opp.* 11:13–26. The Court is not persuaded by this argument. Plaintiff asserts, and Defendants do not dispute, that the cause of this delay was his "good faith attempts to advocate with the agency to reconsider its unreasoned decision." *Reply* 21:25–22:2. This fact distinguishes Plaintiff's situation from the case cited by Defendants, *Quach v. Bank of Am., Nat'l Ass'n*, No. 5:12-cv-05037 EJD, 2012 WL 4498873 (N.D. Cal. Sept. 28, 2012), where a plaintiff waited until two days before a trustee sale to seek a temporary restraining order challenging it. *Id.* at \*4. Here, there is no indication that Plaintiff's delay was in bad faith, and even if it were, that alone would not change the fact that Plaintiff's harm is "ongoing and worsening" given that he is soon expecting a child. *Reply* 22:12–14; *see also Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) ("[T]ardiness is not particularly probative in the context of ongoing, worsening injuries.").

Because the Court concludes that the deprivation of Plaintiff's earnings and job opportunities caused by the loss of his DACA and EAD constitutes irreparable harm, this factor weighs in Plaintiff's favor.

C.      Balance of Hardships and Public Interest

The remaining two factors—balance of hardships and the public interest—merge when, as here, the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

There is undoubtedly a strong interest to be found in the effective and efficient enforcement of the nation's immigration laws. *See, e.g.*, *Reno*, 525 U.S. at 490–91 ("[T]he

Case 5:17-cv-02048-PSG-SHK Document 31 Filed 11/20/17 Page 15 of 16 Page ID #:720

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

consequence of delay . . . in deportation proceedings . . . is to permit and prolong a continuing violation of United States law."). However, the Court does not conclude that this interest outweighs the ongoing harm that Plaintiff is experiencing as a result of losing his DACA and EAD, especially in light of the facts that (1) his DACA was slated to continue until August 2018, and (2) the Court is "simply requiring Defendants to comply with DHS's written procedures as to the adjudication of DACA applications and the termination of DACA status." *Colotl*, 2017 WL 2889681, at *12. Defendants suggest that granting this motion would allow Plaintiff "to maintain a government grace that he may again abuse for the purpose of breaking the law." *Opp.* 31:26–27. The Court is hard-pressed to accept this histrionic conclusion considering that, whatever inconsistencies may exist in Plaintiff's recollection of the events that led to his detainment, he has not been charged with any crime.

Furthermore, Plaintiff persuasively notes the public interest that exists in ensuring that the government complies with its obligations under the law and follows its own procedures. *Mot.* 22:18–20; *see also Brewer*, 757 F.3d at 1069 ("[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available.") (alternations in original); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *Colotl*, 2017 WL 2889681, at *12 ("[T]he public has an interest in government agencies being required to comply with their own written guidelines instead of engaging in arbitrary decision making."). This is in addition to the public's interest in ensuring that Plaintiff remains employed and that his family remains supported.

In short, the Court concludes that the harms that would be experienced by Plaintiff and his family if this motion were denied outweigh any potential injury to Defendants. In addition, the public has a strong interest in ensuring that the nation's immigration laws are robustly—*and fairly*—enforced. These factors therefore weigh in Plaintiff's favor.

IV.  Conclusion

Plaintiff has demonstrated a likelihood of success on the merits of his APA claim and the existence of irreparable harm, and neither a balancing of hardships nor the public interest favors Defendants. Therefore, the Court **GRANTS** Plaintiff Jesus Alonso Arreola Robles's motion for a preliminary injunction.

It is hereby **ORDERED** that USCIS's decision to terminate Plaintiff's status under the Deferred Action for Childhood Arrivals program, memorialized in the March 6, 2017 Notice of Action, is preliminarily enjoined. This preliminary injunction also applies to enjoin termination

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Elaine C. Duke et al. | | |

of Plaintiff's employment authorization, which was included as a portion of the March 6, 2017 Notice of Action.

**IT IS SO ORDERED.**